THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD RENNERT, Defendant-Appellant.

First District (4th Division)   Nos. 61727, 62964 cons.

Opinion filed June 2, 1977.

486

William J. Martin, Ltd., of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and Jerome A. Saxon, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

Defendant, Ronald Rennert, was charged by indictment with the offenses of deviate sexual assault and armed robbery. After a bench trial, the court found defendant guilty of both charges and committed him to the Department of Corrections for a term of six to 18 years. On appeal, defendant contends that (1) the State failed to prove, beyond a reasonable doubt, that defendant was sane at the time of the offense, and (2) the trial court committed reversible error when it used the "right-wrong" test in weighing the psychiatric evidence.

We affirm the convictions.

At trial, the complaining witness, Ms. Fox, testified that on September 19, 1973, she was visiting her son's grave at Rosehill Cemetery when defendant approached and asked how he could locate a grave. As Ms. Fox turned to point out the cemetery office, defendant put his hand over her mouth and a knife against her neck. He threatened to kill her if she screamed.

Defendant took Ms. Fox to the side of a mausoleum, where he demanded her wallet. Defendant took $52, but allowed her to keep one dollar for carfare home. He ordered Ms. Fox to remove her pants, and then to kneel down. Defendant forced his penis into her mouth. Defendant then stated, "If you scream or leave for five minutes, I will come back and kill you." He then ran off.

After a stipulation that defendant's age was 31, the State rested its case in chief.

The defense introduced the testimony of expert witnesses in order to establish an insanity defense. Dr. Jan Fawcett, a psychiatrist at Presbyterian-St. Luke's Hospital and chairman of the department of psychiatry at Rush Medical College was the first to testify. He stated that he had a research interest in the field of depressive suicide and violence, and chemotherapy. Dr. Fawcett had done work in the area of the psychological effects of hormones, and had consulted with an authority in that field, Dr. John Money, concerning the male hormone testosterone and its effects on violence, and the use of drugs in England and Germany to suppress this hormone.

Dr. Fawcett first saw defendant in December of 1973, at Cook County jail, and for two months thereafter in the locked psychiatric unit at Presbyterian-St. Luke's Hospital, where defendant was placed for observation. Defendant was given several psychological and physiological tests, which indicated no mental deficiency, and which showed blood testosterone levels slightly higher than normal. Normal

levels of testoserone are in the range of 400 to 1000 nanograms per decaliter, whereas defendant had a range of 600 to 1100. The function of testosterone is to immediate sexual and aggressive drives in the body, but there is no clear evidence that the level of testosterone affects individual personalities.

Dr. Fawcett evaluated defendant as being afflicted by "a compulsive disorder that led to disordered sexual behavior and driven sexual behavior." This disorder was classified as a disease or defect known as impulsive deviate sexuality, the symptoms being a compulsive and exaggerated sexual drive, irritability, restlessness and a low frustration tolerance.

Dr. Fawcett was of the opinion that defendant was suffering from a mental disease at the time he attacked Ms. Fox, and as a result was unable to conform his behavior to the requirements of law. This opinion was based upon defendant's history of sexual deviation, impotency since adolescence, recurrent behavior in the face of punishment and the high probability of being caught, and his high irritability, short attention span, inability to tolerate frustration and the need for constant movement and exercise. Dr. Fawcett specifically concluded that defendant's conduct was not part of a larger pattern of sociopathic behavior.

Defendant began being treated in January 1974 with injections of progestrone, a female hormone which reduces male levels of testosterone. 400 milligrams of progesterone were injected every 10 days, with the result that testosterone levels were reduced to 7 to 100 nanograms per decaliter, which are generally considered female levels of testosterone. Despite this change in testosterone levels, Dr. Fawcett was of the opinion that defendant still had a mental disease. The use of progesterone is experimental and is not officially recognized in the United States, and only two or three other psychiatrists use the drug for similar treatment.

Dr. James L. Chapel, professor of psychiatry at the University of Missouri also testified for the defense. He had examined defendant for 75 minutes and had spoken with him for 45 minutes by telephone. After reviewing defendant's records and Dr. Fawcett's reports, he reached the opinion that defendant attacked Ms. Fox while suffering from a mental disease which rendered him unable to conform his conduct to the requirements of the law.

Dr. Chapel diagnosed defendant's mental disease as hypersexuality, which defendant was born with, and that the condition still existed at the time of trial. This conclusion was based upon defendant's neurotic symptom of impotence, and since he was not able to complete the act of sexual intercourse, other outlets had to be found. Dr. Chapel's conclusion that defendant was driven to act in such a manner was supported by the fact that defendant had spent eight years in prison and had found it a

frightening experience, yet committed a sexual attack within six months of his release. Dr. Chapel further stated that hypersexuality is not a disease that is recognized by a majority of psychiatrists.

The final expert called by the defense was Paul Walker, an assistant professor of psychology at Johns Hopkins University who had worked with Dr. John Money on the correlation of behavior and hormone levels. After interviewing defendant for an hour and reviewing the medical and police reports, Mr. Walker concluded that defendant suffered from sexual deviancy at the time of the offense, which rendered him unable to conform to the requirements of law, and this condition continued to the present time. Mr. Walker stated that sexual deviancy is recognized as a mental disease by the official list of diagnostic categories used by psychiatrists and psychologists. The witness also stated that hypersexuality could be used to describe a disease, although some people who would be described as hypersexual would not have a disease.

In rebuttal to the defense of insanity, the State called as a witness Dr. Robert Reifman, a psychiatrist and assistant director of the Psychiatric Institute of the Circuit Court of Cook County. Dr. Reifman interviewed defendant for approximately 45 minutes and examined the police reports. He concluded that defendant did not suffer from any mental disease or mental defect at the time of the examination or at any previous time, nor did he lack the substantial capacity to appreciate the criminality of his act or conform his conduct to the requirements of the law.

On cross-examination, Dr. Reifman stated that defendant had told him that he would not have committed the act if a policeman had been present, and that a cemetery was chosen because it was secluded with less chance of his being caught.

Dr. Reifman testified that he was not an expert in the area of hormonal imbalance and its effect on behavior. He testified that a malfunction of the thyroid glands or deficiencies in hormones could cause mental diseases. Dr. Reifman stated that the area of chemistry and mental behavior is highly theoretical, and that he did not accept the proposition that hormonal imbalance could create a mental disease or defect.

After the close of all of the evidence, the trial judge found that there was no question that defendant committed the crimes with which he was charged. The judge went on to state that when the issue of insanity is raised by the defense, the burden is upon the State to prove, beyond a reasonable doubt, that defendant is sane. In concluding, the court found that:

> "I cannot agree that this man was shown insane on September of 1973, and that you are asking me to make a finding now, and I do not think he is insane now. I think he knew what he did on that day, and I think he knows today what he did on that day, so I think the

State has met their burden, so there will be a finding of guilty on both charges, and there will be a judgment on the findings."

OPINION

Section 6—2 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 6—2) provides that:

"(a) A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

(b) The terms 'mental disease or mental defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

■■  All men are presumed to be sane, and in order to present the issue of defendant's insanity, the evidence must raise a reasonable doubt of sanity at the time of the commission of the offense. (*People v. Smothers* (1973), 55 Ill. 2d 172, 302 N.E.2d 324; *People v. Redmond* (1974), 59 Ill. 2d 328, 320 N.E.2d 321.) When a defendant presents some evidence to raise the issue of insanity, the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense. Ill. Rev. Stat. 1973, ch. 38, par. 3—2; *People v. Hawkins* (1972), 53 Ill. 2d 181, 290 N.E.2d 231.

■■  Defendant now argues that the court appears to have relieved the State of its burden when it stated: "I cannot agree that this man was shown insane on September of 1973 * * *." However, this remark was made immediately before the court announced its judgment, and after it correctly stated the burden of proof:

"When it is raised by the defense, the burden goes back to the State to prove beyond a reasonable doubt."

It cannot be concluded that the trial judge improperly imposed any standard other than the proper one in determining when the burden of proof falls upon the State. See *People v. Banks* (1974), 17 Ill. App. 3d 746, 308 N.E.2d 261.

We agree with defendant that three psychiatric experts who testified on his behalf raised the issue of defendant's insanity at the time of the offense. However, defendant's contention that the State failed to prove beyond a reasonable doubt that defendant was sane must be rejected.

The sole evidence relating to the issue of insanity was the testimony of expert witnesses. Defendant argues that the State's sole expert witness failed to rebut the evidence of defendant's insanity, since he was not an expert in the area of hormonal imbalances, while the defense witnesses were very familiar with the field. Three expert witnesses testified for defendant. Dr. Fawcett characterized defendant's disease as impulsive

sexual deviancy, basing his conclusion upon defendant's testosterone level, which he found to be only "slightly higher than normal." Dr. Fawcett admitted that there is no clear evidence that testosterone levels affect individual personalities. Dr. Chapel termed defendant's condition as hypersexuality, which is not a disease that is recognized by a majority of psychiatrists. Mr. Walker, a psychologist, stated that defendant suffered from sexual deviancy.

The State's expert witness, Dr. Reifman, expressed his opinion that defendant did not suffer from a mental disease or mental defect at any time, and did not lack the substantial capacity to conform his conduct to the requirements of the law. This opinion was formed after an interview with defendant and was based in part upon defendant's statement to him that defendant would not have committed the act if a policeman had been present, and that a cemetery had been selected because there was less likelihood of being caught. This indicates that defendant's conduct would have been different under more inhibiting circumstances.

■■ The trial court's decision as to whether the State satisfied its burden must be based upon all of the evidence. (*People v. Horton* (1975), 29 Ill. App. 3d 704, 331 N.E.2d 104.) A finding of sanity will not be disturbed unless it is so palpably erroneous as to indicate that it was based upon prejudice or passion. (*People v. Banks* (1974), 17 Ill. App. 3d 746, 308 N.E.2d 261.) The trial judge was not obligated to accept the opinions of the psychiatrists proferred by defendant. (*People v. Deizman* (1976), 44 Ill. App. 3d 829, 358 N.E.2d 1208.) We believe that Dr. Reifman's testimony and the facts of the offense support the finding that the State proved beyond a reasonable doubt that defendant was sane and the finding was not manifestly against the weight of the evidence. See *People v. Ford* (1968), 39 Ill. 2d 318, 235 N.E.2d 576.

■■ Defendant also contends that the trial court was predisposed to find defendant guilty. This argument is premised upon the court's curtailment of the State's cross-examination of Dr. Fawcett and allowing the State only an abbreviated opportunity to present rebuttal evidence. In support, defendant cites *People v. Johnson* (1972), 4 Ill. App. 3d 539, 281 N.E.2d 451, and *People v. Diaz* (1971), 1 Ill. App. 3d 988, 275 N.E.2d 210. In both cases, the trial court announced its finding of guilty prior to the completion of the defendant's presentation of witnesses. Under such circumstances, it may fairly be inferred that the trial court entertained a predisposition of defendant's guilt. However, when the only conduct defendant complains about is the limitations placed upon the State by the trial judge in examining witnesses and presenting certain rebuttal evidence, we cannot perceive how this indicates prejudice towards defendant or anything other than a desire to shorten the proceedings.

■■ Defendant further contends that the trial court erroneously confused evidence of treatment with evidence of mental disease. The trial

judge did make several remarks concerning the use of drugs in treating defendant. However, when the statements are viewed in the context of the whole record, such parenthetical remarks do not evidence any confusion by the court as to the basis upon which the finding of guilty was predicated. The trial court was merely commenting on the experimental nature of progesterone treatments, finding that it was highly theoretical and not generally accepted. See *People v. Banks* (1974), 17 Ill. App. 3d 746, 308 N.E.2d 261.

■■ Lastly, defendant contends that the court improperly relied upon defendant's ability to distinguish between right and wrong to determine whether defendant was sane. This argument is premised upon the following statement by the court:

> "On the question of rationality, and I may be criticized for what I will say now, one of the famous cases in our time is the so-called *Speck* case, and I read at great length, could that man have been rational on that night that he did what he did to these seven or eight nurses, and our Supreme Court said yes. I don't suppose in a whole history of life will we ever hear of any other *Speck* case. What about that young man in Texas, the name is something like Whitmond, Richmond, in the Bell Tower. I am sure we all understand what I am talking about, and this is my rambling, Mr. O'Gara, and sure enough after it is all over, I think some doctor said he had a tumor on his brain, and that was not like passing out four thousand parking tickets a day, and in this case, I appreciate the three men that came and talked for the defendant, and if there is a doubt, there is surely not a reasonable, and that is what the law says, not any kind of doubt."

While this quoted section indicates that the court was discussing cases involving irrational behavior, a review of the entire record discloses that the trial judge based his finding on the proper test for determining insanity. The State's sole expert witness, Dr. Reifman, explicitly stated that he was of the opinion that defendant was neither suffering from a mental disease or defect, or incapable of conforming his conduct to the requirements of the law. It is clear that the court preferred to accept Dr. Reifman's opinion, based upon the correct test, and to reject the conclusions of defendant's witnesses. Viewing the record as a whole, we do not believe that the above-quoted statements, which constituted only a portion of a lengthy remark preceding judgment, indicate that the trial court employed an improper standard for determining insanity.

For the aforementioned reasons, the judgment of the trial court is affirmed.

Affirmed.

DIERINGER, P. J., and ROMITI, J., concur.