THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL LAWSON *et al.*, Defendants-Appellants.

Fourth District   No. 13935

Opinion filed September 12, 1977.

344

Richard J. Wilson and John L. Swartz, both of State Appellate Defender's Office, of Springfield, for appellants.

Robert J. Bier, State's Attorney, of Quincy (Robert C. Perry and James G. Condon, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendants Michael Lawson and Steven Terwelp appeal from a conviction in a jury trial of attempt (murder) and armed robbery. They were sentenced to terms of 14 to 42 years imprisonment for the offenses. Defendants had also been found guilty of aggravated kidnapping. The judgments of conviction were entered only on charges of attempt (murder) and armed robbery.

On appeal in this court, defendants contend that (1) the trial court erred in failing to suppress certain evidence seized during a search of defendants' automobile; (2) the indictment charging attempt (murder)

was insufficient in that it failed to allege the commission of a substantial step towards the offense of murder; (3) the State failed to prove defendants' guilt beyond a reasonable doubt, particularly with respect to identification testimony by the State's chief witness; (4) the trial court, in denying defendant's motion to suppress identification by a State's witness, erroneously referred to irrelevant evidence which had been stricken by the court; (5) the trial court improperly denied defendants' right to be present at the trial by failing to recess the proceedings upon the failure of defendants to appear after a recess; and (6) defendants' right to a fair trial was unduly prejudiced by certain actions of the prosecutor, which focused the attention of the jury on the absence of defendants from the trial.

Defendants Lawson and Terwelp were charged, by information, in the Circuit Court of Adams County, with attempt (murder), aggravated kidnapping and armed robbery. On February 26, 1975, the court ordered defendants bound over to the grand jury of Adams County on the charges of armed robbery and aggravated kidnapping. On the motion of defendants, the attempt (murder) charge was dismissed on the ground that the acts then alleged as constituting a substantial step toward the commission of murder were not committed in the State of Illinois.

Thereafter, on February 28, 1975, the grand jury returned an indictment charging defendants with the offenses of armed robbery, aggravated battery and attempt (murder). The count of the indictment which charged attempt (murder) alleged that defendants had committed a substantial step toward the commission of murder by placing Ronald Berry in an automobile, against his will and by threats of force, at the point of a pistol, and by telling Berry that they, the defendants, were going to kill him. Defendants moved to dismiss the attempt (murder) count of the indictment on the ground that the act alleged did not constitute, as a matter of law, a substantial step toward commission of the offense of murder. On April 7, 1975, defendants' motions to dismiss were denied.

Prior to trial, defendants filed a motion to suppress the in-court identification of defendants by Berry on the alleged improperly suggestive lineup procedures, and on August 15, 1975, the trial court conducted a hearing on defendants' motion. From the record, it is noted that defendants participated in police department lineups on two occasions, February 4, 1975 and April 30, 1975. The lineup held on February 4, 1975, was videotaped, and the videotape was shown to Berry in his hospital room on February 26, 1975. Berry viewed the April 30 lineup in person at the police station. Upon viewing the videotape in his hospital room, Berry positively identified defendant Terwelp, and selected two other participants in the lineup, one of whom was defendant

Lawson, as the other individual to be identified, but was unable at that time to distinguish with certainty between the two individuals from the videotape.

Upon viewing the lineup on April 30, 1975, Berry identified defendant Lawson, but was then unable to identify defendant Terwelp due to the presence in the lineup of another man of similar appearance.

At the suppression hearing, the trial court viewed the videotapes of both the February 4 and April 30 lineups, and heard testimony from Berry concerning the lineups. The State's Attorney then elicited testimony from Berry regarding the incidents giving rise to the charges against defendants, and defense counsel objected to this testimony on the ground that it was irrelevant to the motion to suppress. After the court heard Berry's testimony concerning the matters giving rise to the charges, the trial court granted the motion of defense counsel and ruled that such testimony be stricken. After hearing additional testimony from Berry, and testimony from defendant Terwelp's counsel (who had been present during the April 30 lineup); from a participant in the February 4, lineup; and from the police officer who arrested defendants on February 4, the trial court denied defendants' motion to suppress the in-court identification.

In ruling on defendants' motion to suppress, the trial court stated:

"Here was a filling station that was testified was brightly lighted. The car drove in. The attendant came out to provide the service the car likely wanted. I think the answer was, '$5.00 worth of gas,' or something to that effect. The attendant, I presume, was reasonably close to the automobile when the conversation took place. The attendant then goes on to put the gas in the car. The testimony shows that he put in some gasoline and that during that time one of the men got out of the car and said, 'Where is the john?' or words to that effect. And again, there was an opportunity to observe that person. Subsequently the attendant goes inside the station, which is also lighted, and he sees both of these people in there. * * *

With respect to the independent identification of the witness, quite honestly it seems to me that this identification is probably the strongest factor of the cases near as I can see it at this point. I really can't see if this Court would conclude that those line-ups were bad or impermissibly suggestive that the identification should be suppressed. But I cannot conclude that, not on the evidence we have heard."

It appears from the statements that the trial court made reference to testimony given by Berry regarding the alleged criminal incidents, which the court had ordered stricken.

Defendants also, prior to trial, filed a motion to suppress the evidence which had been taken during a search of the automobile in which defendants had been arrested. The facts relevant to defendants' motion to suppress evidence were placed before the trial court in a stipulation by the parties. It was stipulated that defendants were arrested in the early morning hours of February 4, 1975, in Mt. Sterling, Illinois, and that the arresting officer searched defendants incident to the arrest. While the officer searched the car, including the trunk and glove compartment, nothing was seized at the time of arrest. Defendants were taken into custody and removed to the Brown County Jail. Defendants' vehicle was left unattended for about 45 minutes, and was then towed to a garage in Mt. Sterling between 2 and 3:30 a.m. Subsequently, the automobile was searched for instrumentalities and fruits of the alleged crime. The search was not conducted for specified items, and was conducted without a warrant. The search consisted of examining the vehicle, taking vacuum samples from the interior of the car, taking latent fingerprints and removing soil samples from the inside and the underside of the vehicle. It was further stipulated that there was no judge who had his residence in Brown County in the early part of February 1975. The trial court, after consideration of defendants' motion, entered an order denying the motion to suppress the evidence seized from the automobile.

Testimony at the trial established that on February 3, 1975, Ronald Berry was employed at a Clark Oil Station in Quincy, Illinois, and that on that date Berry was scheduled to work from 3 p.m. to midnight. Late that evening, a 1960 or 1961 white Ford Galaxy occupied by two white males entered the station. Upon speaking to the driver, Berry proceeded to fill that automobile tank with gasoline and to check the transmission fluid. The passenger asked Berry the location of the restroom, and went to the restroom, and returned. Subsequently, Berry entered the station to check the price of transmission fluid, and the two accompanied him. When Berry turned around to tell the men the price of the fluid, the taller man, who had driven the automobile, was holding a gun on Berry and told Berry to get into the back room of the station. Berry gave the men all the money he had, and, when told that Berry had no more money, the shorter man struck Berry. The men then told Berry they were going to kill him and told him to walk to the car. The men and Berry entered the car, with Berry sitting in the front seat between the two men. They proceeded across the Mississippi Bridge to West Quincy. After turning off on a dirt road, the men demanded more money from Berry and then left the automobile. Berry told the men he had no more money, and was then shot in the throat. After Berry had fallen to the ground, he was shot from two to four additional times. The two men then took Berry's billfold and wedding band, walked back to the car, and left.

Berry thereafter crawled and walked to a house trailer, and knocked

and kicked on the door. A police officer arrived, and Berry told the officer what had happened. Berry described the men, and included the fact that one of the men had worn an army-type fatigue jacket. At the trial, Berry made in-court identifications of the defendants as the men who had entered the station on the night in question. On cross-examination, Berry was questioned regarding the two lineups he had viewed and testified to positively identifying one individual from each lineup and to some confusion as to the names of defendants. His identification at the trial, however, was specific as to both defendants.

From the record it also appears that shortly after 1 a.m. on February 4, 1975, Officer Wendell Streitzle of the Illinois State Police received a radio transmission concerning an armed robbery, involving a white 1962 Ford with three male occupants and which also included a description of the individuals the police wanted. At 1:30 a.m. on that date, Officer Streitzle observed a white early 1960's model Ford, and he followed and stopped the vehicle, and ordered the occupants to leave the car. The officer then placed the occupants, defendants Lawson and Terwelp, under arrest. As we have previously noted, the automobile driven by defendants was subsequently searched. Items recovered in the search included an army-type fatigue jacket which was found in the trunk of the car. Expert testimony established that red fibers recovered from Berry's clothing matched red carpet fibers taken from the defendants' automobile, and that red hair in debris (vacuumed from defendants' automobile) could have come from Berry and could not have come from defendants. Additional testimony indicated that a ring, resembling the wedding ring taken from Berry, was found at about 6 a.m. on February 4, 1975, in the jail cell occupied by defendant Lawson.

George Lupo, a witness for the defense and bartender at the New Virginia Hotel, testified that defendants were present at the tavern from 7 p.m. on February 3, 1975, until 10 or 10:30 that evening, when defendants left for from 5 to 15 minutes and then returned, and stayed until the tavern closed at 11:20 or 11:30 p.m. Testimony by two other defense witnesses indicated that defendants were present at the St. Jude Hotel for a period of time around 11:30 p.m. or 12 midnight on the night in question. Additional testimony from William Hankins, proprietor of the Copper Kettle Tavern, established that defendants were drinking at that bar from shortly after midnight until 1 a.m. on February 4, 1975.

After conclusion of the evidence and closing arguments, the jury found defendants guilty of attempt (murder), aggravated kidnapping, and armed robbery. The trial court entered judgments of conviction on the attempt and armed robbery charges against defendants, and sentenced defendants concurrently to terms of 14 to 42 years imprisonment on each conviction, as we have noted.

■■ The first issue raised by defendants in this court, is the contention

that the trial court erred in failing to suppress the evidence seized during the search of defendants' automobile. We note that the search of which defendants complain was conducted after defendants had been arrested, after the automobile had been seized, and without a search warrant. The United States Supreme Court, in *Chambers v. Maroney* (1970), 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975, upheld the constitutionality of such a search, conducted with probable cause, and stated:

> "Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the 'lesser' intrusion [of an immobilization] is permissible until the magistrate authorizes the 'greater.' But which is the 'greater' and which is the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." (399 U.S. 42, 51-52, 26 L. Ed. 2d 419, 428, 90 S. Ct. 1975.)

Since we believe it is clear that the officers had probable cause to search defendants' automobile, we must conclude under the precedent of *Chambers*, the search was reasonable under the Fourth Amendment, and that the trial court properly denied defendants' motion to suppress the evidence seized in the search.

■■ It is also contended on appeal that the indictment charging attempt (murder) was insufficient in that it failed to allege the commission of a substantial step toward the offense of murder. We note that section 8—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 8—4) provides:

> "A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense."

The supreme court of this State stated in *People v. Woodward* (1973), 55 Ill. 2d 134, 137-38, 302 N.E.2d 62:

> "The sufficiency of an indictment for attempt was specifically considered by this court in *People v. Richardson* (1965), 32 Ill. 2d 497, where at page 502 we said: 'All that need be shown in a charge of attempt is the intent to commit a specific offense * * * and an overt act constituting a substantial step toward the commission of that offense * * *.' "

As was also noted in the Appellate Court for the Fifth District, in *People v. Delk* (5th Dist. 1976), 36 Ill. App. 3d 1027, 1033, 345 N.E.2d 197:

" '[I]n order to constitute an attempt, it is not requisite that the act of the defendant is necessarily the last deed immediately preceding that which would render the substantive crime complete.' (*People v. Paluch*, 78 Ill. App. 2d 356, 358, 222 N.E.2d 508, 509.)"

We conclude that the recital in the indictment of defendants' act in forcing Berry into the automobile at gunpoint, and threatening to take Berry's life, obviously constituted a substantial step toward the commission of murder, and that the indictment, therefore, sufficiently alleged the offense of attempt (murder).

It is also contended on appeal by defendants that the State failed to prove defendants' guilt beyond a reasonable doubt, in view of the identification testimony given by Berry. Defendants contend that Berry's in-court identification of defendants was not convincing because of Berry's positive identification of only one defendant in each of the line-ups conducted prior to trial, and because of the alibi testimony offered by witnesses for the defense. The supreme court of this State, however, in *People v. Stringer* (1972), 52 Ill. 2d 564, 568-69, 289 N.E.2d 631, outlined the basis upon which a court of review deals with factual issues of this type, where the court stated:

" '[W]e may not substitute our judgment for that of a jury on questions involving the weight of the evidence or the credibility of the witnesses [citations], and we will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt.' [Citations.] 'It is also undisputed in Illinois that where the identification of the accused is at issue, the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made. [Citations.]' "

Accord, *People v. Jones* (1975), 60 Ill. 2d 300, 325 N.E.2d 601.

■■ In another district, in *People v. Mays* (3d Dist. 1976), 38 Ill. App. 3d 182, 184-85, 347 N.E.2d 235, we stated:

"While it is true that failure of a witness to include a certain distinctive physical characteristic in an original description of the offender may affect the credibility of the description [citation], the important factor is the ability of the witness to make a positive identification after having had an adequate opportunity to view the offender at the time of the crime. [Citation.] Where a witness makes a positive identification, precise accuracy in preliminary description is not necessary. [Citation.] The discrepancies, if any, go to the weight of the identification testimony and are to be evaluated by the trier of fact. [Citations.]"

We, therefore, conclude that Berry's identification of defendants in the pretrial lineups, including his inability to positively and unequivocally select each defendant from one lineup, is analogous to discrepancies in preliminary descriptions, and therefore "go to the weight of the identification testimony and are to be evaluated by the trier of fact."

■■ In the instant case, we note that Berry made positive in-court identification of defendants, and that defense counsel questioned Berry concerning the pretrial lineups so that the jury knew of · such identification. Berry's testimony was supported by the introduction into evidence of an army-type fatigue jacket recovered from the trunk of defendants' automobile, and by expert testimony that fibers found on Berry's clothes matched the carpeting in defendants' automobile. Although defendants introduced alibi testimony, we are unable to conclude that the evidence against defendants is so inadequate as to raise a reasonable doubt of defendants' guilt.

■■ It is also contended by defendants that the trial court committed reversible error when, in denying defendants' motion to suppress in-court identification by Berry, the trial court referred to certain testimony given by Berry concerning the incident on the night of February 3, when the testimony to which the court referred was part of the portion previously stricken from the suppression hearing, pursuant to defendants' motion that the testimony was not relevant. We note, preliminarily, that this issue was not raised in the suppression hearing or in defendants' post-trial motion. As was stated in *People v. Guynn* (3d Dist. 1975), 33 Ill. App. 3d 736, 737, 338 N.E.2d 239:

> "It is clear that error must be preserved either by objection at the proper time, or by filing of a post-trial motion (*People v. Long* (1968), 39 Ill. 2d 40, 43, 233 N.E.2d 389) and that if a post-trial motion is filed, any errors not set forth in the motion are deemed to be waived (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856)."

This court is, therefore, justified in considering that defendants have waived such objection. We also note, nevertheless, as stated in *People v. Fox* (1971), 48 Ill. 2d 239, 245-46, 269 N.E.2d 720:

> "The evidentiary question involved in identification testimony is two-fold: (1) in-court identification of the defendant and (2) testimony given in court concerning extra-judicial identification of the defendant by the witnesses * * *. In the first situation, if the identification is based on a source independent of and untainted by the identification at the pretrial confrontation, the same is admissible even if the pretrial confrontation was conducted in violation of the defendant's right to counsel under the sixth

amendment. [Citations.] Also, if the confrontation is conducted in a suggestive manner conducive to mistaken identification, the question of whether the defendant was denied due process of law in violation of his rights under the fourteenth amendment depends on the totality of the circumstances. If the witness had an adequate opportunity to observe, and there is little likelihood that the procedures used led to a mistaken identification, the conviction based on a subsequent in-court identification will not be set aside. [Citations.]"

■■ We believe that it is clear from the record that Berry's testimony regarding the events of February 3, 1975, were relevant at the suppression hearing with regard to Berry's opportunity to observe defendants at that time, and, therefore, that any error by the trial court in the suppression hearing was the granting of defendants' objection to Berry's testimony in the final ruling on defendants' motion to suppress.

■■ Defendants next contend that the trial court improperly denied defendants' right to be present at trial by failing to recess the proceedings upon the failure of defendants to appear after a recess in the trial. From the record we note that defendants were present in court through the conclusion of the State's case in chief, and that on March 18, 1975, the fourth day of the trial, the court noted defendants' failure to return after a recess. When neither defense counsel could account for the whereabouts of his client, the court recessed for about an hour, whereupon the clerk called the names of defendants and the court, in the jury's presence, noted the absence of defendants. In the afternoon of that day, defense counsel presented their case. It appears that on the following day, again in the absence of defendants, the trial court held closing arguments and instructed the jury, and the jury thereafter conducted its deliberations. It also appears from the record that defendants were free on bond during the trial. On this issue, we note that the Illinois Supreme Court stated in *People v. Steenbergen* (1964), 31 Ill. 2d 615, 618, 203 N.E.2d 404:

"A defendant in a criminal case has an absolute right to be present at his trial and this right can be waived only by the defendant himself. [Citation.] Voluntary absence from the court is deemed a waiver of the right to be present. [Citations.] It is not only defendant's right to be present, but it is also his duty, especially where he has been released on bail. To allow a defendant to stop trial proceedings by his voluntary absence would allow him to profit by his own wrong. [Citations.]"

(Accord, *People v. Rife* (4th Dist. 1974), 18 Ill. App. 3d 602, 310 N.E.2d 179.) We, therefore, conclude that defendants' failure to return to the trial after a recess in the midst of the trial, constituted defendants' voluntary

waiver of the right to be present at the trial, particularly in view of defendants' duty to be present by reason of their release on bail during the trial.

■■ Defendants finally argue that their right to a fair trial was unduly prejudiced when, in their absence, the State called, at the close of the defense's case in chief, a police officer who testified that he was acquainted with defendants' and that defendants were not present in the courtroom and that defendants' whereabouts were unknown to him. We note, however, that attention had been called to defendants' absence by delays in the proceedings, by the clerk calling the names of defendants, and by the trial court noting in the record the absence of defendants. As stated in *People v. Castillo* (1st Dist. 1976), 40 Ill. App. 3d 413, 420, 352 N.E.2d 340:

> "The purpose in reviewing a criminal case is to determine whether a just verdict has been rendered, upon sufficient competent evidence, after a trial in which no error prejudicial to defendant's rights has occurred rather than a determination of whether the record is error free. [Citation.] Where it appears that the errors in the record could not have reasonably affected the result, the errors are harmless and the judgment of conviction should be affirmed. [Citation.]"

In view of the many references and clear, obvious circumstance of defendants' absence during the latter part of the trial, and of the evidence of defendants' guilt, we conclude that the error, if any, with respect to testimony regarding defendants' absence was not error which would justify a reversal of this cause and was precipitated by the actions of the defendants themselves.

For the reasons stated, therefore, the judgment of the Circuit Court of Adams County is affirmed.

Affirmed.

STOUDER and BARRY, JJ., concur.