THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROY BASCOMB, Defendant-Appellant.

Fourth District   No. 15294

Opinion filed July 30, 1979.

Richard J. Wilson and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Marc D. Towler and Karen L. Boyaris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Defendant, Roy Bascomb, was charged by information with burglary and theft over $150 (Ill. Rev. Stat. 1977, ch. 38, pars. 19—1, 16—1) in December 1977. On June 15, 1978, defendant was convicted by a jury of both counts. He was sentenced to 3 years' probation with 7 months' periodic imprisonment.

During the early morning of October 11, 1977, the Champaign-Urbana Elks Club was burglarized. Cash, checks, and liquor were taken. The testimony of two alleged accomplices, Roger Young and Robert Smith, was the only evidence that was offered at trial of defendant's involvement in the crime. Defendant, testifying on his own behalf, denied involvement in the incident and stated that he had never seen Robert Smith or Roger Young before they testified against him.

Luke Kennedy, manager of the restaurant where defendant was employed as a dishwasher in October 1977, testified for defendant. Kennedy stated that the restaurant employs approximately 50 persons, that he supervises all employees, and that he regularly talks with his employees. He testified that defendant had worked at the restaurant approximately two or three months prior to October 1977 and that most of the employees knew defendant.

Kennedy further testified that in October 1977, he had the occasion to hear discussions which concerned defendant's reputation for honesty and integrity and that defendant's reputation was good. On cross-examination, the witness testified that most of these conversations

occurred around the time of defendant's arrest in December 1977; however, some of them may have occurred in October. The witness specifically remembered that on the night of defendant's arrest, another manager stated that in his opinion Roy Bascomb was probably innocent because he had a very good opinion of defendant's honesty and integrity. Kennedy also remembered talking to another restaurant employee following defendant's arrest.

The State moved to strike Kennedy's testimony concerning defendant's honesty and integrity. The Assistant State's Attorney argued that the conversations all apparently took place some time approximately three months after the incident and that there was no testimony regarding what his specific reputation was at the time of the incident. Defense counsel argued that the witness did testify that he had some general conversations prior to the date of the offense although he could not recall any specifically. Counsel also argued that aside from the conversations that took place in December, there was sufficient foundation to show that Kennedy was acquainted with defendant's reputation.

The court found that the time requirement rule was appropriate and that the reputation testimony of Kennedy should be stricken. The court accordingly refused defendant's instruction which concerned evidence of defendant's reputation for honesty and integrity and instructed the jury that the testimony of Kennedy concerning the reputation of defendant was to be disregarded.

Defendant's first contention in this direct appeal is that the trial court struck the reputation testimony from the record improperly because the testimony provided a sufficient foundation for the witness to testify about defendant's reputation for honesty prior to the offense. We agree.

■■ Illinois law requires evidence of character to be confined to proof of defendant's general reputation at or prior to commission of the offense. (*People v. Willy* (1921), 301 Ill. 307, 317-18, 133 N.E. 859; *City of Chicago v. Lowy* (1976), 40 Ill. App. 3d 950, 954, 353 N.E.2d 208, 212; *People v. Carruthers* (1974), 18 Ill. App. 3d 255, 265, 309 N.E.2d 659, 667.) In *Willy*, the Illinois Supreme Court expressed the rule as follows:

> "Evidence of character should be confined to proof of general reputation at or prior to the commission of the offense. It must not be allowed to cover reputation after the commission of the offense or what was said after the offense with reference to the character of the accused either before or after the offense * * *." 301 Ill. 307, 317-18, 133 N.E. 859, 864.

■■ It is also well settled that a defendant's character can be proved only by evidence of general reputation, not personal opinion, which is based upon the witness' contact with defendant's neighbors and associates. (*People v. Moretti* (1955), 6 Ill. 2d 494, 523-24, 129 N.E.2d 709, 725, *cert.*

*denied* (1958), 356 U.S. 947, 2 L. Ed. 2d 822, 78 S. Ct. 794; *Carruthers.*) The reputation witness must be shown to have adequate knowledge of the subject. (*People v. Reeves* (1935), 360 Ill. 55, 65, 195 N.E. 443, 448; *People v. McClelland* (1968), 96 Ill. App. 2d 410, 414, 238 N.E.2d 597, 599.) For example, this court in *McClelland* determined that certain reputation witnesses were incompetent because they were not from defendant's community and apparently were not familiar with defendant as a member of his home community. In *Reeves*, none of the reputation witnesses "claimed any acquaintance with the associates or neighbors of the defendant or with the public generally with whom the defendant came in contact." 360 Ill. 55, 64, 195 N.E. 443, 447.

Here, Kennedy, as restaurant manager, had contact with defendant's work associates. The witness supervised defendant, who was a regular employee, for at least two months prior to the break-in at the Elks Club. Kennedy testified that he knew his employees and often spoke with them. The witness certainly was in a position to have been aware of defendant's reputation for honesty among the restaurant staff. Furthermore, we believe that Kennedy's testimony evidenced an actual awareness of the defendant's reputation prior to the October 11 occurrence.

Under *Willy*, the two December conversations, about which the witness testified, clearly are inadmissible and do not reveal an awareness of defendant's reputation at the critical time. However, on direct examination, the witness gave an affirmative response to the following question: "And you believe as a result of these conversations, as a result of your acquaintance with other employees who worked with Roy Bascomb at the Lamplighter, that you were aware of defendant's reputation for honesty and integrity?" On cross-examination, the witness said that some conversation possibly could have taken place in October, but that he could not recall for sure.

In *People v. Dunham* (1931), 344 Ill. 268, 274, 176 N.E.2d 325, 328, the supreme court stated that it was not necessary for a reputation witness to be able to testify that he had heard defendant's reputation being discussed for "[h]is reputation may be known though never generally discussed." While in *People v. Pieper* (1951), 410 Ill. 15, 19, 101 N.E.2d 109, the court determined that the fact that no discussion was heard does not justify the inference that the witness has no basis upon which to testify about the defendant's general reputation.

Here, the trial court, in ruling on the State's motion to strike Kennedy's testimony, determined that "the evidence is pretty clear no conversations occurred at all prior to the date in question." The court then concluded, "Under these circumstances, I think that the time requirement rule [*Willy*] is appropriate." In the hearing on defendant's post-trial motion, the trial court stated:

"[I]t's my distinct recollection that Mr. Kennedy testified, notwithstanding he was in a position to know, he in fact never discussed this defendant's reputation with anyone, ever, prior to his arrest on this charge. * * * Now that he can't identify specific conversations, which I think is the law, doesn't mean he couldn't testify as long as he could testify that some conversations occurred, that he discussed it with somebody, at some time, that there was some discussion."

From the record, it appears as if the trial court considered discussions or conversations as the only means by which this witness could gain an awareness of defendant's general reputation for honesty. In light of *Dunham* and *Pieper*, the court placed too much emphasis on conversations without expressing whether the testimony established another basis for the witness' conclusion. Although the reception of reputation evidence is left largely to the discretion of the trial court (*People v. Emmett* (1975), 34 Ill. App. 3d 167, 171, 340 N.E.2d 235, 238), we cannot conclude that it clearly was within the trial court's discretion to infer that the witness had no basis for his testimony because he could not testify with certainty that discussions took place during the critical period. Kennedy did acknowledge an awareness of defendant's reputation for honesty because of his acquaintance with other employees who worked with defendant. This was a sufficient basis for the reputation testimony. Thus, upon this record, the ruling was error.

The State argues that any error which the trial court may have committed by striking the reputation testimony was rendered harmless in view of the evidence of guilt. The United States Supreme Court in *Chapman v. California* (1967), 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 828, held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman* involved prosecution comments at trial and a jury instruction, both of which concerned defendants' failure to testify. The court determined that despite the reasonably strong circumstantial evidence against defendants, honest, fair-minded jurors might very well have brought in not-guilty verdicts absent the constitutionally forbidden comments. 386 U.S. 18, 25-26, 17 L. Ed. 2d 705, 711, 87 S. Ct. 824, 829.

In so holding, the court determined that it was adhering to the approach taken in *Fahy v. Connecticut* (1963), 375 U.S. 85, 11 L. Ed. 2d 171, 84 S. Ct. 229. In *Fahy*, the court framed the critical question as follows: "[W]hether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." (375 U.S. 85, 86-87, 11 L. Ed. 2d 171, 173, 84 S. Ct. 229, 230.) The *Fahy* court expressly

declined to consider whether there was sufficient evidence on which the defendant could have been convicted *without admission of the erroneous testimony.*

Illinois courts have followed the *Chapman* standard for determining whether error was harmless or reversible. This is true, even though the error may not be of a constitutional nature. For example, in *People v. Lewis* (1974), 18 Ill. App. 3d 281, 285, 309 N.E.2d 784, the court stated that it must believe, based upon recorded facts and circumstances, that denying defendant the opportunity to ask certain questions of the identifying witness on cross-examination was harmless error beyond a reasonable doubt. The court was impressed by the fact that the only testimony which involved defendant other than that of the complaining witness, was the identification. The court found it "conceivable" that absent the identification testimony, the jury might have accepted defendant's version that he was assisting complainant rather than participating in the offense. Defendant was granted a new trial.

The court employed a similar analysis in *People v. Deery* (1976), 41 Ill. App. 3d 302, 353 N.E.2d 419. In *Deery*, the appellate court held the testimony of two State witnesses to be irrelevant, therefore, admission of the testimony constituted error. In determining whether the error was harmless beyond a reasonable doubt, the court observed that in a prosecution for receiving stolen property where the defendant is a person of good reputation, the crucial issue of guilty knowledge sometimes has to be resolved "on a very slight difference in credibility between the accuser [the immunity witness] and the accused." (41 Ill. App. 3d 302, 309, 353 N.E.2d 419, 423.) One witness had been granted immunity in exchange for his testimony.

The *Deery* court was not prepared to say that the jury's assessments of the credibility of the immunity witness and defendant were not influenced by the erroneously admitted testimony of the State's other witness. Indeed, that witness' testimony "may well have proved decisive in a case where the only other direct evidence was of dubious quality." (41 Ill. App. 3d 302, 309, 353 N.E.2d 419, 423.) For that reason the court held: "[W]e would not be warranted in concluding that the testimony of [the nonimmunity witness] had no effect on the jury, and we do not, therefore, concede that it was harmless error." 41 Ill. App. 3d 302, 309, 353 N.E.2d 419, 423-24.

So, too, the court in *People v. Gibson* (1977), 55 Ill. App. 3d 929, 938, 371 N.E.2d 341, 347, applied the beyond-a-reasonable-doubt standard and concluded:

> "We find that the admission of this double hearsay denied
> defendants their constitutional right to confront witnesses against

them. Before it can be said that a Federal constitutional error can be held harmless a reviewing court must be able to declare beyond a reasonable doubt that the error did not contribute to the finding of guilty. [Citation.] We are unable to say that this double hearsay did not contribute to the finding of guilty; the fact of a robbery was well established, but no witnesses identified either defendant as participating in it nor were they linked to it by any evidence other than their confessions."

The cause was remanded for a new trial.

In contrast, *People v. Castillo* (1976), 40 Ill. App. 3d 413, 352 N.E.2d 340; *People v. Lucien* (1975), 34 Ill. App. 3d 161, 340 N.E.2d 65; *People v. Lawson* (1977), 52 Ill. App. 3d 343, 367 N.E.2d 560, and *People v. Limas* (1977), 45 Ill. App. 3d 643, 359 N.E.2d 1194, are cases where the courts found the errors to be harmless beyond a reasonable doubt.

In *Castillo,* allowing the jury to take a composite drawing of the defendant into the jury room was held to be harmless error because identification of defendant by three victims was clear and convincing and untouched by the error. The error in *Lucien* was committed when the trial court permitted the State to rebut the testimony of defendant's alibi witness with the testimony of an unlisted witness; the error was determined to be harmless beyond a reasonable doubt. The court stated that defendant legitimately could not claim surprise since he received the name of the unlisted witness in a list of witnesses within an indictment for another robbery which had occurred on the same date and in the same neighborhood. Furthermore, the court noted that defendant had been positively identified by two victims. In *Lawson,* the erroneous admission of testimony, which called attention to the fact that defendant was not present in the courtroom and that his whereabouts was unknown, was held to be harmless. The court found, for a number of reasons, that the jury would have been aware of defendant's absence without the testimony. The court also took into consideration the evidence establishing defendant's guilt.

*Lewis, Deery,* and *Gibson* all involved "close call" situations in which the quality or quantum of the convicting evidence, absent the error, raised the possibility that the jury may not have returned a guilty verdict but for the erroneously admitted evidence. While in *Lucien* and *Lawson* the errors themselves almost were inconsequential, and, when viewed in relation to the evidence establishing defendant's guilt, the errors were rendered harmless. In *Castillo,* the error (composite drawing in jury room) was of a more serious nature but was deemed to be harmless when balanced against the strength of the State's evidence—identification of defendant by three victims.

■■ Although accomplice testimony is sufficient to sustain a conviction, it should be viewed with scepticism. (*People v. Hansen* (1963), 28 Ill. 2d 322, 192 N.E.2d 359, *cert. denied* (1964), 376 U.S. 910, 11 L. Ed. 2d 608, 84 S. Ct. 665; *People v. Mullins* (1963), 28 Ill. 2d 412, 192 N.E.2d 840, *cert. denied* (1964), 376 U.S. 924, 11 L. Ed. 2d 619, 84 S. Ct. 685.) The weight which is to be accorded to uncorroborated testimony of accomplice witnesses is affected by leniency which was promised by the State in return for the testimony (*People v. Hermens* (1955), 5 Ill. 2d 277, 285-86, 125 N.E.2d 500), the comparative backgrounds of the accused and his accusers (*People v. Price* (1974), 21 Ill. App. 3d 665, 675, 316 N.E.2d 289, citing *Hansen* and *People v. Mostafa* (1971), 5 Ill. App. 3d 158, 274 N.E.2d 846), and inconsistencies and improbabilities in the testimony of the accomplices. *Price*, 21 Ill. App. 3d 665, 672-73, 316 N.E.2d 289.

In the instant case, defendant was convicted on the basis of uncorroborated accomplice testimony. The appropriate instruction regarding the suspicious nature of accomplice testimony was given.

The record does not reveal any substantial inconsistencies or improbabilities in the testimony of either Robert Smith or Roger Young. At the time of defendant's trial, Young already had pleaded guilty to the burglary charge for the October 11 breakin; the theft charge had been dropped pursuant to a plea agreement. He was sentenced to 4 years' probation and a 6-month work release project in the county jail. Smith stipulated to the allegations of a delinquency petition that had been filed in connection with the October incident. The record contains little information about the backgrounds of either, except that Young had been convicted of committing another burglary at the Elks Club which occurred on December 4, 1977.

Defendant had no history of criminal activity prior to his arrest for the October 11 Elks Club burglary.

The alleged error of which defendant complains is the striking of the only reputation testimony that was offered in his defense. In this case, where defendant testified on his own behalf, and where a trace of an alibi was offered in defendant's behalf, it is possible that the testimony of defendant's employer as to defendant's good reputation for honesty could have bolstered the credibility of defendant in the minds of the jurors.

■■ The circumstances here are more analogous to the circumstances of those cases which held that the error was not harmless beyond a reasonable doubt. The error itself is not inconsequential. When the error is evaluated with respect to the inherently suspicious nature of the only convicting evidence, the striking of the testimony "might have contributed" to the conviction. *Fahy v. Connecticut* (1963), 375 U.S. 85, 86-87, 84 S. Ct. 229, 230, 11 L. Ed. 2d 171, 173.

For the reasons stated, this conviction must be reversed and the defendant afforded a new trial. We do not need to consider the sentencing issue.

Reversed and remanded for a new trial.

REARDON, P. J., and TRAPP, J., concur.