THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WING CHEUNG, Defendant-Appellant.

First District (4th Division)   No. 79-210

Opinion filed April 24, 1980.

Elliot Samuels, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Robert J. Kaiser, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:

At the conclusion of a bench trial, defendant, Wing Cheung, was found guilty of armed robbery (Ill. Rev. Stat. 1977, ch. 38, par. 18—2). He was sentenced to a term of 6 to 18 years imprisonment.

On appeal, defendant contends: (1) the trial court unduly restricted his right to cross-examination; (2) the trial court improperly shifted the burden of proof to him; (3) he was denied the effective assistance of counsel; and (4) his sentence is excessive.

We affirm.

The evidence discloses that an armed robbery occurred at 4:45 a.m. on December 13, 1977, at a Jack-In-The-Box restaurant in Chicago Heights. There were three eyewitnesses, Rosalin Hopewell, Virginia Young, and Robert Luckett. The restaurant was brightly lighted at the time of the incident.

Hopewell testified that Young and she were working at the restaurant when defendant came in. As Hopewell stood behind the counter, defendant walked up to her, pulled out a revolver, pointed it at her, and demanded all the money. She gave him all the money in the register.

Young testified that she was standing near Hopewell when the events described by Hopewell took place. She corroborated Hopewell's testimony.

Luckett testified that just as he was entering the restaurant he saw defendant about to leave the restaurant. Defendant pointed a revolver at him and ordered him to get out of the restaurant. Luckett left the restaurant and hid behind a nearby gasoline station. From there he saw defendant get in a car and drive away. Luckett further stated that he then ran and got into his own car and followed defendant to a place he later learned was defendant's home. Luckett said he then returned to the Jack-In-The-Box where he met some police officers. He then led these officers to defendant's home.

Officer Henry Rice, Jr., testified that shortly after the incident he went to defendant's home. With another officer, he entered the house. While searching for defendant in a bedroom, Officer Rice saw defendant jump out of a closet and point a revolver at him. The other officer grabbed defendant and wrestled the gun from his hand. Thereupon,

defendant was placed under arrest and was subsequently charged with the offense of armed robbery.

OPINION

I

Defendant's first contention is that the trial court committed reversible error by unduly restricting his cross-examination of witnesses Hopewell and Luckett.

■■ At trial, Hopewell testified that defendant had taken $110 and had used a "long gun." During cross-examination, defense counsel twice tried to impeach her with prior inconsistent statements contained in the complaint she had signed on the day of the incident. In the complaint, Hopewell had said defendant had taken $60 and had used a .45 Colt Automatic. The State objected to both attempts at impeachment contending there was a lack of a proper foundation to support the alleged impeachment. In neither attempt did defense counsel ask preliminary questions as to the time, place, and circumstances of making the statement.[1] The trial court sustained the objections.

At trial, Luckett testified that when he followed defendant's car from the Jack-In-The-Box to defendant's home, he noticed the car was "zigging and zagging" along the road. Luckett also said he had known defendant for a few years and had drunk alcohol with him on occasion. Based on this foundation, defense counsel asked Luckett if he believed defendant was drunk when he saw him inside the Jack-In-The-Box. The State's objection to the question was sustained.

The defendant contends the trial court abused its discretion by not allowing defense counsel to proceed with his attempt at impeachment. However, we need not determine whether the trial court abused its discretion and thus committed reversible error in preventing additional cross-examination since we find that even if there was error, it was harmless.

■ Before a court of review will reverse a conviction because of error committed at trial, the defendant must show that if the error had not occurred then the outcome of the trial could reasonably have been different. (See *People v. McCasle* (1966), 35 Ill. 2d 552, 221 N.E.2d 227; *People v. Lawson* (1977), 52 Ill. App. 3d 343, 367 N.E.2d 560; *People v. Castillo* (1976), 40 Ill. App. 3d 413, 352 N.E.2d 340.) In this case the evidence of guilt is overwhelming. The discrepancies in Hopewell's trial testimony and her signed complaint were so insignificant that it is unlikely her credibility would have been destroyed if the proposed impeachment

---

[1] We note that these traditional requirements are the normal method of laying a foundation for impeachment but they are not always necessary. See *People v. McIntosh* (1979), 70 Ill. App. 3d 188, 388 N.E.2d 142.

had been allowed, and since she was only one of three eyewitnesses it is extremely unlikely that the outcome of the trial would have been different.

As to the cross-examination of Luckett, we realize that at the time of trial armed robbery was considered a specific intent crime subject to a defense of voluntary intoxication (see *People v. White* (1977), 67 Ill. 2d 107, 365 N.E.2d 337, overruled by *People v. Banks* (1979), 75 Ill. 2d 383, 388 N.E.2d 1244), but even assuming Luckett had said that he believed the defendant was drunk, we believe the outcome of the trial would have been the same. Luckett saw the defendant for only a few seconds inside the Jack-In-The-Box and thus his opinion as to defendant's suggested intoxicated state would have been speculation at best. Also, merely being "drunk" or "intoxicated" is insufficient to create a defense of intoxication. (*People v. Hare* (1962), 25 Ill. 2d 321, 185 N.E.2d 178.) The condition of intoxication must be so extreme as to negate the mental state required for the crime. (*People v. Jones* (1978), 67 Ill. App. 3d 477, 384 N.E.2d 523; *People v. Gross* (1977), 52 Ill. App. 3d 765, 367 N.E.2d 1028.) The evidence in the present case clearly shows that defendant was in control of his faculties. He was able to point a gun at Hopewell and demand all the money; he was able to take the money and walk out of the Jack-In-The-Box; he was able to drive home in his car and hide himself in a closet when the police came. Based on these facts, it is entirely unlikely the trial court would have found that defendant was under that degree of intoxication necessary for a defense based upon Luckett's opinion that defendant was drunk.

Accordingly, we find no merit to defendant's first contention.

## II

Defendant's second contention is that the trial court improperly shifted the burden of proof to him to show his innocence and thereby violated his right to have the State meet its obligation to prove him guilty beyond a reasonable doubt.

Following the presentation of evidence and closing arguments, the trial court found defendant guilty of armed robbery. Thereafter, a hearing was held to impose sentence. Before pronouncing sentence the trial judge remarked that the evidence in the case was "conclusive" and "uncontradicted." Defendant contends that this observation indicated the trial judge's belief that defendant was required at trial to present a defense and affirmatively produce evidence contradicting the State's evidence. Consequently, defendant argues the trial judge must have believed that defendant had the burden to present a defense and that the State was not required to prove him guilty beyond a reasonable doubt.

It is presumed that a trial judge in a bench trial considers only

admissible evidence and applies the proper standard to that evidence in determining a defendant's guilt or innocence. (See *People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649; *People v. Rennert* (1977), 49 Ill. App. 3d 485, 364 N.E.2d 506; *People v. Barnes* (1977), 48 Ill. App. 3d 226, 363 N.E.2d 50.) Based on this presumption, and having reviewed the record, we find no merit to defendant's contention. The trial judge's remark that the evidence was uncontradicted—which happened to be true—was made during a post-trial hearing long after defendant had been found guilty. The trial judge's remark in no way indicated that he had shifted the burden of proof to the defendant. Seen in the context of the whole trial, the remark, at most, expressed the trial court's conclusive determination that there was no doubt as to the defendant's culpability. The defendant's contention is without merit.

### III

Defendant's third contention is that he was denied the effective assistance of counsel. Counsel in the present case was privately retained. For such counsel to be ineffective the representation must be of such a low caliber as to amount to no representation at all or reduce the court proceedings to a farce or sham. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677; *People v. Torres* (1973), 54 Ill. 2d 384, 297 N.E.2d 142.) Based on this standard, and our review of the record, we find defendant was not denied effective assistance of counsel.[2]

Defendant points to specific instances of conduct on the part of defense counsel in support of his contention. He alleges that counsel made no pretrial motions, including one for discovery, and without discovery counsel could not possibly have been prepared for trial. The trial record shows that counsel did move for a change of judge and for the appointment of an interpreter for defendant, both of which motions were granted. The record also shows that the State voluntarily produced discovery thus making a motion unnecessary. At trial, counsel was able to cross-examine the State's witnesses and bring out what few discrepancies existed in their testimony. Based on the foregoing, we find that counsel was in fact prepared for trial.

Defendant points to counsel's failure to move to suppress the three eyewitnesses' identification of defendant. It appears that shortly after the defendant's arrest the three eyewitnesses were taken to the police station

---

[2] Defendant has asked us to adopt a different test for determining whether he had effective assistance of counsel. His proposed test would require us to find that counsel met the minimum standards required for professional representation. (See *United States ex rel. Williams v. Twomey* (7th Cir. 1975), 510 F.2d 634; *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677 (concurring opinion).) Though we decline to adopt such a test, having no authority to accept it, we find that even if we were to apply it, defendant still had effective assistance of counsel.

where they positively identified defendant, but the identifications were not made in a lineup, but were made on a one-to-one basis. Also, counsel on behalf of defendant was not present at this identification procedure. Defendant contends that counsel should have moved to suppress the eyewitnesses' in-court identifications because such identifications may have resulted from an unnecessarily suggestive pretrial identification procedure.

■■ ■ Whether to file a motion to suppress evidence is a matter of professional judgment for counsel and the mere failure to file such a motion does not prove ineffective assistance of counsel. (*People v. Washington* (1968), 41 Ill. 2d 16, 241 N.E.2d 425; see *People v. Price* (1979), 79 Ill. App. 3d 1112, 398 N.E.2d 1158.) In the present case, if counsel had moved to suppress the identifications, the motion would have undoubtedly been unsuccessful. Even if we were to assume the police station identifications were improper, the in-court identifications would still have been allowed. When there has been an improper pretrial identification, an in-court identification is still admissible if it is of independent and reliable origin. (*People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819; *People v. Patrick* (1972), 53 Ill. 2d 201, 290 N.E.2d 227.) Here, all three eyewitnesses saw defendant face-to-face under the bright lights of the Jack-In-The-Box restaurant. Witness Luckett had known and seen defendant several times before the incident. Based on these facts, it is most unlikely that a motion to suppress the in-court identifications would have been granted. (*Cf. People v. Johnson* (1970), 45 Ill. 2d 501, 259 N.E.2d 796, where the supreme court allowed eyewitnesses' in-court identification of alleged robbers in spite of an improper pretrial lineup since the eyewitnesses saw the alleged robbers under brightly lighted conditions at the time of the robbery.) Thus here, we must necessarily conclude that defense counsel's failure to file a motion to suppress the identifications does not even show poor judgment, much less ineffective assistance of counsel.

Defendant points to counsel's failure to present a defense and to counsel's asking defendant in court, through the interpreter, whether defendant desired to testify in his own behalf, which defendant declined to do.

■■ Defense counsel cannot present a defense on behalf of defendant unless one exists. (See *People v. Hills* (1979), 71 Ill. App. 3d 461, 389 N.E.2d 873.) The only possible defense defendant had in this case was voluntary intoxication, and the only person who was competent to testify to that defense under the facts disclosed in the record was defendant himself. Since defendant declined to testify, there was little counsel could do, and thus his failure to present a defense does not show his incompetence.

■■ As to counsel's asking defendant in court whether he wanted to testify, we note that this was a bench trial, and thus counsel's in-court request could not have harmed defendant since it is presumed that a trial judge, who knows the law, will not penalize a defendant because of his refusal to testify. Thus, defense counsel's in-court request did not prejudice defendant and does not show any incompetence on defense counsel's part.

Necessarily, we find defendant had effective assistance of counsel.

## IV

Defendant's last contention is that his sentence is excessive. Defendant was convicted of armed robbery. He chose to be sentenced under the law in effect at the time of the offense. The law then said that armed robbery was a Class 1 felony subject to any term of imprisonment in excess of four years. (Ill. Rev. Stat. 1977, ch. 38, pars. 18—2 and 1005—8—1(b)(2).) Defendant was sentenced to 6 to 18 years. We have no basis to find the sentence excessive in that it is within the required parameters as controlled by statute.

Under the sentencing law applicable to this case, a court of review should not disturb a sentence imposed by the trial court unless it clearly appears that the penalty is a great departure from the fundamental law and its spirit and purpose. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677; *People v. Heflin* (1978), 71 Ill. 2d 525, 376 N.E.2d 1367.) In Illinois, the spirit and purpose of the law are upheld when a sentence reflects the seriousness of the offense and gives adequate consideration to the rehabilitative potential of the defendant. *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.

In imposing sentence here, the record shows the trial judge considered the defendant's family and educational background; it was disclosed that defendant had been raised by his mother and had chosen to drop out of school after completing grade school. The trial judge considered the nature and character of the defendant; he found that defendant's insistence upon an interpreter in court indicated defendant's overall contemptuous attitude since all the witnesses testified that defendant spoke perfect English at the time of the robbery, since Luckett said that when he had met defendant on previous occasions defendant had spoken fluently in English, since a probation officer, who talked to defendant on several occasions while preparing the presentence report, said that defendant always spoke to him in fluent English, and since defendant on one occasion in open court declared in English that he was displeased with the proceedings. The trial judge considered the seriousness of the offense, an armed robbery, and considered the fact that one of the victims, Hopewell, had left her employment at the Jack-In-

The-Box allegedly because of the trauma she had suffered as a result of the robbery. Based on the foregoing, the trial court concluded that more than the minimum sentence should be imposed.

The trial court reached its decision based upon legally proper considerations and standards. We are unable to find that the sentence imposed was a great departure from the spirit and purpose of the law.

Accordingly, for all the reasons stated, we find that the judgment of the trial court should be affirmed.

Affirmed.

JIGANTI and ROMITI, JJ., concur.