THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EUGENE VARNADO, Defendant-Appellant.

First District (2nd Division)    No. 77-137

Opinion filed October 31, 1978.

Cornelius E. Toole, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Kenneth T. McCurry, and Margaret K. Stanton, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PERLIN delivered the opinion of the court:
Defendant, Eugene Varnado, in a bench trial was found guilty of the

murder of Hazel Durham and was sentenced to serve from 25 to 50 years in the Illinois State Penitentiary. Defendant appeals.

The issues presented for review are (1) whether the State proved beyond a reasonable doubt that defendant was sane at the time of the commission of the offense and (2) whether the trial court's decision to exclude evidence contained in a letter written by defendant to his mother was an abuse of discretion.

We affirm.

The following facts were adduced by stipulation: In early September 1972 the victim, Hazel Durham, leased a room to the defendant, Eugene Varnado. Defendant's whereabouts were thereafter unknown until he was arrested in San Francisco on September 24, 1972. At approximately 10:30 p.m. on September 14, 1972, Max Terrell, another tenant of Mrs. Durham, found a set of the landlady's keys under a blanket on the bed in his room. Terrell noticed Mrs. Durham's car was not parked outside, and he assumed she was not at home. Before leaving for work the next morning, Terrell noticed Mrs. Durham's car was still missing. On his way to work he tried to reach Mrs. Durham by telephone to ask about the keys but found her line continuously busy. Fearing that something was amiss, Terrell called police. He then met two Chicago police officers, Stack and Cunningham, at Mrs. Durham's home. They discovered Mrs. Durham's body in the living room, and it appeared that her throat had been slashed. The room was in disarray, and a television set, stereo equipment, a camera and various other items belonging to the victim were missing.

On September 22, 1972, the victim's car was discovered abandoned in St. Louis, Missouri. Mrs. Durham's television set, stereo equipment and camera were retrieved from the vehicle along with a suitcase and briefcase containing defendant's name.

On September 24, 1972, investigators Sykes and Crump of the Chicago Police Department were informed by defendant's mother, Mrs. Varnado, that defendant was in San Francisco. Mrs. Varnado told police that defendant had asked her to purchase a prepaid airline ticket from San Francisco to Chicago for him under the name of Charles White. Defendant was arrested as he attempted to board the plane in San Francisco. At the San Francisco police station defendant gave a lengthy tape recorded statement detailing the murder and his subsequent flight from the scene to avoid capture by police. On October 1, 1972, Officers McCabe and Kenny of the Chicago Police Department transported defendant and defendant's taped confession back to Chicago.

After the State presented its case, defendant raised the affirmative defense of insanity. Dr. Kelleher, Director of the Psychiatric Institute of the circuit court of Cook County, testified on defendant's behalf. Dr. Kelleher examined defendant on three separate occasions totaling four

hours: March 15, 1974, and April 1, 1975, to determine defendant's fitness to stand trial, and July 23, 1975, to determine defendant's mental state.[1]

Dr. Kelleher concluded that on the date of the murder defendant was suffering from a mental illness to such an extent that he was unable to appreciate the criminality of his behavior and was unable to conform his behavior to the requirements of the law. In reaching his conclusions, Dr. Kelleher relied on his examinations of the accused, discussions with defendant's mother, various psychological tests given to defendant, the report of another psychiatrist, Dr. Malek,[2] the police report and defendant's confession given to the San Francisco police.

Dr. Kelleher stated that defendant belonged to the Black Muslim organization, but that his ideas on the religion were fanatical and "mixed with delusions." The doctor termed defendant's illness a "paranoid type of psychosis" in that defendant was suffering from delusions and "possibly hallucinations of persecutory nature." The doctor also stated that defendant acted under the false belief that his landlady was extremely harmful to him. Dr. Kelleher concluded that because of these delusions defendant was "forced to kill Mrs. Durham," but the doctor acknowledged that the fact that defendant told the San Franciso police that he contemplated for ten minutes whether or not to kill Mrs. Durham was inconsistent with the doctor's theory that defendant was "forced" to commit murder. Dr. Kelleher also acknowledged that defendant's flight from the scene after placing the victim's keys in Terrell's room could be interpreted as defendant's desire to avoid capture and to shift suspicion to another person.

Dr. Bernard Rubin, a psychiatrist, psychoanalyst and law professor at Northwestern University Law School, testified in rebuttal that he examined defendant on October 8, 1975. Dr. Rubin concluded that although defendant suffered from a mental illness at the time of the offense, the illness did not preclude defendant from appreciating the criminality of his conduct or conforming his conduct to the requirements of the law. Dr. Rubin based his conclusions on his examination of defendant, his reading the reports of Doctors Kelleher, Malek and Schlensky of the Psychiatric Institute of Cook County, psychological reports on defendant, the police report and on defendant's confession.

Dr. Rubin determined that defendant did not suffer from any hallucinations. He stated that although defendant may have suffered from

---

[1] Prior to Dr. Kelleher's examinations, defendant was examined on numerous occasions in 1973 by the staff at the Psychiatric Institute. Defendant remained in Cook County Jail throughout the period of these examinations.

[2] Dr. Malek was on the staff of Dr. Kelleher at the Psychiatric Institute in 1973. Dr. Malek's conclusions as to the nature of defendant's mental disease differed from those of Dr. Kelleher. The record does not disclose, however, Dr. Malek's opinion as to defendant's fitness to stand trial.

a delusion at the time he attacked Mrs. Durham, it was not a "compelling delusion" which would deprive him of control over his behavior. Defendant planned much of his activity and had the capacity to determine his actions.

Officer Russell Ahlgrim of the San Francisco Police Department testified that he conversed with defendant and observed his demeanor. It was his opinion that defendant was not suffering from a mental disease on September 24, 1972. The officer expressed his opinion based on his experience as a mental health officer for 4½ years and his two years in the Navy as a supervisor over corpsmen working in the mental ward at Bethesda Naval Hospital.

San Francisco police officer Donald Hanson testified that he was present when defendant made his tape recorded confession. It was his opinion that on September 24, 1972, defendant appeared "lucid, rational, in control of his faculties," and that defendant could appreciate the criminality of his conduct.

John McCabe, the Chicago police officer assigned to transport defendant back to Chicago, testified that while aboard the plane defendant told McCabe that he placed items belonging to Mrs. Durham in Max Terrell's room in order to shift the blame for the murder upon Terrell. Officer McCabe also testified that in his opinion defendant on October 1, 1972, was not mentally ill, and defendant could conform his conduct to the requirements of the law.

Mrs. Varnado testified that two or three days after September 12, 1972, defendant telephoned her and asked how she was feeling. When Mrs. Varnado told her son that she was ill, he stated, "Well, that's good, that's good." Defendant also telephoned his mother on September 24, 1972, and admitted killing Mrs. Durham. Defendant told his mother, "I was ordered by God to do it," and "No, mama, I can't give myself up. Because I am at war, and you have to understand that." Mrs. Varnado stated that she received a letter from defendant dated October 4, 1972. When defense counsel sought to introduce the letter into evidence, the court ruled the letter should be excluded because there had been a violation of the discovery rules.

Mrs. Varnado stated that during September 1972 defendant's behavior was "strange" and "disturbing," and she did not think "he knew what he was doing." She also expressed the opinion that defendant was suffering from a "mental illness" at the time of the murder.

At the conclusion of the evidence the court directed the prosecutor and defense counsel to prepare written legal memoranda on the issue of defendant's sanity. The court determined defendant was sane beyond reasonable doubt at the time of the murder, and that defendant was guilty of murder.

I

■■ Defendant contends the State failed to prove beyond a reasonable doubt that he was sane at the time of the commission of the crime. It is a general rule that all men are presumed sane, but when evidence raises a doubt as to a defendant's sanity at the time an offense is committed, the affirmative defense of insanity is placed in issue. (*People v. Redmond* (1974), 59 Ill. 2d 328, 320 N.E.2d 321.) Once the defense is raised, the presumption of sanity ceases, and the State must establish defendant's sanity beyond a reasonable doubt. *People v. Ellis* (5th Dist. 1976), 39 Ill. App. 3d 373, 350 N.E.2d 326.

Defendant asserts that the expert testimony of Dr. Kelleher was sufficient to raise reasonable doubt as to defendant's sanity at the time of the offense. Dr. Kelleher concluded defendant was suffering from a mental illness to such an extent that he was unable to appreciate the criminality of his behavior or to conform his conduct to the requirements of the law. Section 6—2(a) of the Criminal Code of 1961 provides:

"A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."
(Ill. Rev. Stat. 1975, ch. 38, par. 6—2(a).)

Dr. Kelleher stated that defendant suffered from "auditory hallucinations" which caused defendant to believe that God told him that Mrs. Durham was harmful to him, thereby "forcing" defendant to kill her. However, Dr. Kelleher admitted that the fact defendant waited in the victim's room for ten minutes contemplating whether or not to kill her was inconsistent with his own theory. On cross-examination Dr. Kelleher acknowledged that the fact that defendant placed the victim's keys in another tenant's room could ·be interpreted as a desire by defendant to shift suspicion to the other tenant. Dr. Kelleher also acknowledged that defendant's flight from the murder scene could indicate that defendant knew the murder was wrong.

■■ Weight to be given an expert's opinion is to be measured in part on factual details which he marshals in support of his opinion. (*People v. Greenfield* (4th Dist. 1975), 30 Ill. App. 3d 1044, 1048, 333 N.E.2d 36.) The court was not obliged, as a matter of law, to accept the opinion of Dr. Kelleher that defendant was insane. *People v. Banks* (1st Dist. 1974), 17 Ill. App. 3d 746, 755, 308 N.E.2d 261.

■■ Defendant also contends that the testimony of Mrs. Varnado was sufficient to raise a reasonable doubt of defendant's sanity. Mrs. Varnado testified that she spoke with defendant two or three days after the killing, that defendant acted "strange" and his conduct was very "disturbing" to

her. Testimony that a defendant's conduct was "disturbing" or "bizarre" falls far short of portraying a serious mental condition or a substantial history of mental illness. (*People v. Jackson* (1st Dist. 1978), 57 Ill. App. 3d 809, 815, 373 N.E.2d 583.) Also, evidence of idiosyncratic behavior, irresponsible conduct, unrealistic judgments or the commission of atrocious crimes does not alone justify reasonable doubt of sanity. *People v. Harrington* (2d Dist. 1974), 22 Ill. App. 3d 938, 945, 317 N.E.2d 161.

■■ Defendant asserts the police officers' testimony that defendant exhibited rational conduct should not have been considered by the court. He cites defendant's adoption of the name "Mohammed Allah" as convincing evidence of defendant's irrational behavior. Defendant alleges it was error for the court not to take judicial notice of the fact that when defendant referred to himself as "Mr. Allah," he was referring to himself as "Mr. God." The record reflects defendant never requested the court to judicially note that "Allah" in Arabic is the functional equivalent of the word "God." A party desiring to have a fact judicially noticed should bring the matter to the attention of the trial court on the record. A court is not required to take judicial notice without a proper request to do so. (*People v. Clifton* (3d Dist. 1973), 11 Ill. App. 3d 112, 114, 296 N.E.2d 48.) Whether by using his adopted name defendant meant to refer to himself as "God" is pure speculation and thus it appears not an appropriate subject for judicial notice.

■■ The court's determination that the State proved defendant sane beyond a reasonable doubt was not against the manifest weight of the evidence. A reviewing court will not disturb the court's finding of sanity unless it was so manifestly against the weight of the evidence as to indicate the finding was based on passion or prejudice. *People v. Rennert* (1st Dist. 1977), 49 Ill. App. 3d 485, 364 N.E.2d 506.

II

Defendant contends the trial court abused its discretion in rejecting defendant's exhibit No. 3, a letter dated October 4, 1972, allegedly written by defendant to his mother. Defense counsel sought to introduce the letter into evidence during the surrebuttal portion of defendant's case. The court ruled defendant's exhibit No. 3 should be excluded on the grounds that defendant failed to comply with the State's request for discovery under the Supreme Court Rules. Under Supreme Court Rule 415(b) (Ill. Rev. Stat. 1975, ch. 110A, par. 415(b)) both the prosecutor and defense counsel have a continuing duty to disclose discoverable material if it comes to the attention of either party after pretrial discovery has been completed. (*People v. Shegog* (3d Dist. 1976), 37 Ill. App. 3d 615, 618, 346 N.E.2d 208.) Under Supreme Court Rule 415(g)(i) (Ill. Rev. Stat. 1975,

ch. 110A, par. 415(g)(i)) the trial court is authorized to exclude evidence for failure to comply with a discovery rule. *People v. Douthit* (5th Dist. 1977), 51 Ill. App. 3d 751, 754, 366 N.E.2d 950.

Defendant cites *People v. Rayford* (5th Dist. 1976), 43 Ill. App. 3d 283, 356 N.E.2d 1274, to support his contention that the court's ruling that the letter should be excluded was an abuse of discretion. In *Rayford* defense counsel informed the prosecutor and the court immediately after he became aware of the existence of a witness. The court in *Rayford* concluded that under such circumstances, defense counsel's conduct fell "far short of the flagrant violation which might justify the use of such a drastic measure as exclusion." 43 Ill. App. 3d 283, 287.

■■ In the instant case the record reflects that Mrs. Varnado had defendant's letter in her possession for almost three years, and defense counsel had knowledge of the letter's existence at least one week before he sought its introduction. Despite this knowledge, defense counsel never informed the prosecutor or the court of the letter's existence. Under the circumstances in this case, the trial court did not abuse its discretion in rejecting defendant's last minute attempt to introduce evidence which was never made available to the prosecution. *People v. Middleton* (1st Dist. 1976), 38 Ill. App. 3d 984, 994, 350 N.E.2d 223.

■■ Furthermore, defendant's failure to raise the issue in a written motion for a new trial constitutes a waiver of that issue, and it cannot be urged as a ground for reversal on review. (*People v. Le May* (1966), 35 Ill. 2d 208, 212, 220 N.E.184; *People v. Touhy* (1964), 31 Ill. 2d 236, 240, 201 N.E.2d 425.) Since defendant did not raise the issue of the court's ruling that defendant's exhibit No. 3 should be excluded in his written post-trial motion, it is deemed waived. See *People v. Irwin* (1965), 32 Ill. 2d 441, 443, 207 N.E.2d 76.

For the foregoing reasons we find no reversible error.

Affirmed.

STAMOS, P. J., and BROWN, J., concur.