THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY SPEIGHT *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 1—88—3439, 1—88—3510 cons.

Opinion filed December 4, 1991.

Randolph N. Stone, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant Melvin Whitten.

Michael J. Pelletier and Martin Carlson, both of State Appellate Defender's Office, and Chapman & Cutler, both of Chicago (Michael T. Benz, of counsel), for appellant Anthony Speight.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michael Latz, and Gregory Vaci, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Defendants appeal a decision in which both were convicted of armed robbery and attempted armed robbery of a couple on January 14, 1988. Anthony Speight (Speight) was sentenced to 15 years in

prison, and Melvin Whitten (Whitten) was sentenced to six years in prison. Their cases have been consolidated on appeal.

Speight contends that: (1) a police officer's testimony as to narcotics paraphernalia found on the defendant's person constituted inadmissible evidence of other crimes and denied the defendant a fair trial; (2) the State's definition of "reasonable doubt" in its closing argument as "substantial" doubt improperly shifted the burden of proof to the defendant; (3) the State's misstatement of the law in its closing argument regarding the use at trial of tape-recorded statements was prejudicial and improperly implied that defendant's counsel was attempting to confuse the jury; and (4) the cumulative impact of the prosecutorial misconduct and the improper evidence of other crimes requires reversal of Speight's conviction.

Whitten argues that (1) the trial court erred when it *sua sponte* took judicial notice of facts which partially discredited a critical defense witness, and (2) since Speight was not shown to be armed when he robbed complainant Grady Guilty, Whitten was improperly convicted of armed robbery under the theory of accountability.

We reverse and remand both convictions for new trial, Speight's based upon the improper introduction of evidence of other crimes, and Whitten's based upon the trial court's improper *sua sponte* taking of judicial notice of facts after evidence was closed.

On Thursday, January 14, 1988, the complainants, Grady Guilty and his cousin, Patricia Gamble, were walking through an alley near the corner of Jackson and Sacramento Streets when two men stepped in front of them and one of the men said, "Hey, get back and give it up." The darker-skinned man, allegedly Speight, then pushed Mr. Guilty farther into the alley and told him he wanted money. At the same time, the lighter-skinned man, allegedly Whitten, grabbed Ms. Gamble by the collar, held a knife to her, and frisked her. After Mr. Guilty gave the dark-skinned man $37, complainants were told to walk down the alley and not look back. Mr. Guilty, however, followed the men to a gas station, where he called police to report the robbery and describe the men. A few minutes later, police arrived and drove Mr. Guilty to where the two suspects were being detained. Mr. Guilty positively identified the two as the same ones who had robbed him, stating that the light-skinned man had the knife and the dark-skinned man took his money. At trial, Mr. Guilty identified the light-skinned man as Melvin Whitten and the dark-skinned man as Anthony Speight.

Speight first contends that Officer Touss' testimony referring to narcotics paraphernalia found on him at the time of arrest constituted

inadmissible evidence of other crimes and denied him a fair trial. We agree.

During direct examination, this exchange ensued between Officer Touss and the prosecutor:

"Q. [The Prosecutor]: In the course of this search what, if anything, did you discover, Officer?

A. $27.

***

Q. Did you find anything else in the course of your search of this individual?

A. Yes.

Q. What was that?

A. There was cigarettes, some keys, there was some empty pony pack.

Q. What is a pony pack, Officer?

A. It is a white piece of paper approximately four by four commonly used to—

[Defense Counsel]: Objection.

THE COURT: Sustained. The jury will disregard testimony concerning anything that has been related, has been called a pony pack.

[The Prosecutor]: What did you do with those other items?

A. Turned them over to the gentleman."

A "pony pack" refers to white paper used to hold cocaine. Speight contends that when the jury heard Officer Touss refer to an empty pony pack found on his person at the time of the arrest, he was denied a fair trial. Speight argues that the testimony was likely to lead the jury to believe he used drugs, certainly injecting irrelevant prejudice against him and increasing the likelihood of finding him guilty.

Evidence of other crimes is objectionable "not because it has no appreciable probative value, but because it has too much." (*People v. Lehman* (1955), 5 Ill. 2d 337, 125 N.E.2d 506.) Evidence of a crime for which a defendant is not on trial is inadmissible if relevant only to establish the defendant's propensity to commit crimes. (*People v. Lawler* (1991), 142 Ill. 2d 548, 563, 568 N.E.2d 895; *People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238.) The Illinois Supreme Court has stated that an erroneous admission of evidence of other crimes carries a high risk of prejudice and ordinarily calls for reversal. (*People v. Richardson* (1988), 123 Ill. 2d 322, 343, 528 N.E.2d 612; *People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238.) The limitation on that notion is that any error, defect, irregularity or vari-

ance must affect substantial rights or it will be disregarded. 107 Ill. 2d R. 615(a); see *Richardson*, 123 Ill. 2d at 343.

■ In the present case, we find that the testimony that defendant carried drug-related paraphernalia implies that defendant used drugs and may lead the jury to believe Speight has a propensity to commit crimes, thus wrongly persuading the jury that he is guilty of armed robbery. As the *Lindgren* court stated, "Such evidence overpersuades the jury, which might convict the defendant only because it feels he or she is a bad person deserving punishment." *Lindgren*, 79 Ill. 2d at 137.

We find the testimony of Officer Touss concerning the pony pack to be prejudicial to defendant's right to a fair trial. While the trial court sustained an objection to a detailed discussion of the pony pack, we find its admonishment in this instance does not necessarily eradicate the effect of the introduction of improper evidence upon the minds of the jury. *People v. Graham* (1989), 179 Ill. App. 3d 496, 508-09, 534 N.E.2d 1382.

*Graham* is similar in that even though the defendant there chose not to testify at trial to avoid impeachment by evidence of prior crimes or misconduct, the prosecutor nonetheless elicited testimony from a police officer regarding defendant's prior criminal activity. The *Graham* court found that the trial could have been conducted without improper reference to prior crimes or arrests. The court stated that although the evidence was sufficient to convict beyond a reasonable doubt, defendant was entitled to have his guilt or innocence determined by the jury without improper and prejudicial matters being erroneously interjected. (*Graham*, 179 Ill. App. 3d at 509; *People v. Popely* (1976), 36 Ill. App. 3d 828, 836, 345 N.E.2d 125.) Similarly, in the present case, we can find no justifiable reason for the prosecutor to have specifically elicited testimony regarding evidence of criminal activity, since it is irrelevant to the charges against Speight.

As in *Graham*, the other evidence against defendant Speight is strong. However, the consequences of implicating to the jury that defendant is a drug user may cause substantial prejudice toward defendant that cannot easily be measured or cured by admonition. Therefore, we cannot conclude that the properly admitted evidence, including the disputed identification evidence, is so overwhelming that no fair-minded jury could have voted for an acquittal.

Because we remand for new trial based upon this issue, we need not address Speight's other contentions.

Defendant Whitten first contends that it is not within the trial judge's power to take judicial notice of facts *sua sponte* and then use

the facts to discredit a witness. We disagree. A trial judge may, on rare occasions, take *sua sponte* judicial notice of facts during a trial, however, not *after* the close of evidence, at the report of his findings. If taken during the course of the trial, such evidence may be argued, explained or rebutted. Upon this basis, we reverse Whitten's conviction and remand for new trial.

The witness for defendant was Rev. James Clasberry, who is a church minister, Masonic lodge president and manager of the grocery where defendant worked at the time of the incident. The Reverend stated that he remembered Whitten leaving work at 5:30 p.m. on January 14, 1988, the day of the incident, because the Reverend loaned Whitten money that day. When the Reverend's recollection was challenged upon cross-examination, he stated that he remembered that day because January 14 was a Friday and defendant was scheduled to be inducted as a Mason on Saturday, January 15.

In making his findings, the trial judge stated:

"I have had an opportunity to look at a calendar and I take judicial notice of the fact the 15th was a Friday and the 14th was a Thursday, not a Saturday.

If Reverend Clasberry was initially right and the rites of initiation into the Masonic lodge were to take place on Saturday, 14th was a Thursday not the Friday next.

I have a reason to think maybe Reverend Clasberry's remembrance of these dates is legitimately and honestly in error."

No party requested that the judge take judicial notice of the dates.

To take judicial notice of a fact is merely another way of saying that the usual forms of evidence will be dispensed with if the fact is one which is commonly known or readily verifiable from sources of indisputable accuracy. *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 394, 469 N.E.2d 1085; *In re Marriage of Holder* (1985), 137 Ill. App. 3d 596, 602, 484 N.E.2d 485.

We do not agree with defendant Whitten that a trial judge may never take *sua sponte* judicial notice of facts. We find that a trial judge may take *sua sponte* judicial notice on rare occasions, but must take care that such notice does not amount to advocacy for either party. While Illinois law is silent on the subject, this court in at least two cases would apparently allow a trial judge to use his discretion. *People v. Varnado* (1978), 66 Ill. App. 3d 413, 419, 384 N.E.2d 37; *People v. Clifton* (1973), 11 Ill. App. 3d 112, 114, 296 N.E.2d 48.

In *Clifton*, the court stated that a party who desires judicial notice be taken of a fact should bring the matter to the attention of the

court, on the record, because, "If he does not, the court of review will not *ordinarily* judicially notice such fact." (Emphasis added.) *(Clifton,* 11 Ill. App. 3d at 114.) In *Varnado,* the court stated that a party should request judicial notice because "[a] court is not *required* to take judicial notice without a proper request to do so." (Emphasis added.) *(Varnado,* 66 Ill. App. 3d at 419.) While suggesting that a court not ordinarily take judicial notice *sua sponte,* the language in both of these cases implies that such judicial notice may in some cases be taken.

Courts in other jurisdictions have long recognized a judge's discretion to take *sua sponte* judicial notice. See, *e.g., Hammonds v. State* (1991), \_\_\_ S.W.2d \_\_\_ (appellate court may take *sua sponte* notice of "almanac-type" facts such as upon which day of the week a particular date falls); *Housing Authority of City of Norwalk v. Brown* (1990), 23 Conn. App. 366, 579 A.2d 1110 (court erroneously took *sua sponte* judicial notice of a grievance procedure that is not published or disseminated, and denied the affected party a chance to review or refute the court's reliance upon the noticed material); *Fields v. A & B Electronics* (Okla. 1990), 788 P.2d 940 (State supreme court took *sua sponte* judicial notice of the specific date which tolled an appeal period); *Ross v. Indiana* (Ind. App. 1977), 365 N.E.2d 1231 (trial court properly took *sua sponte* judicial notice of a discretionary order issued by the State Department of Natural Resources); *Wisconsin v. Barnes* (1971), 52 Wis. 2d 82, 187 N.W.2d 845 (trial court not allowed to take *sua sponte* judicial notice of research initiated by it unless the parties are given formal notice before the verdict is rendered, including the names of the sources and the facts upon which the court intends to rely). See also IX J. Wigmore, Evidence §2568 (Chadbourn rev. ed. 1981).

■ While we hold that a trial judge in rare instances may take *sua sponte* judicial notice of facts, the judge must make clear during the course of the trial, and not after the evidence is closed, what facts and sources are included in the *sua sponte* notice. The concept of fair play requires that all parties to an action be given a fair opportunity to rebut any evidence which might be damaging to their position. *(Drovers National Bank v. Great Southwest Fire Insurance Co.* (1977), 55 Ill. App. 3d 953, 957, 371 N.E.2d 855.) A party has the same right to rebut evidence admitted by *sua sponte* judicial notice as it does to rebut evidence introduced by the opposing party. *Brown,* 23 Conn. App. at 370, 579 A.2d at 1112; *Barnes,* 52 Wis. 2d at 88, 187 N.W.2d at 848.

While the record shows that defendant failed to raise this issue at trial or in post-trial motions, we find it amounts to plain error since we cannot conclude that the evidence against Whitten is so overwhelming, including the disputed identification evidence, that no fair-minded jury could have voted for an acquittal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 198-99, 522 N.E.2d 1124.) We reverse and remand on this ground.

We also address Whitten's second contention, that he could not be found guilty beyond a reasonable doubt of armed robbery since codefendant Speight possessed no weapon when he robbed Mr. Guilty of $37. Alternatively, defendant Whitten contends that there was no concerted effort made by the two defendants against the two victims; rather, there were two separate incidents, one robbery committed against Mr. Guilty and one attempted armed robbery committed against Ms. Gamble. Therefore, Whitten argues, because the incidents were separate and not part of a concerted effort to rob the couple, the two cannot be convicted of armed robbery on the accountability theory since the suspect alleged to be Speight had no weapon when he robbed Mr. Guilty.

■ We first dispose of Whitten's alternative argument. There is no evidence whatsoever in the record to indicate that the two suspects were not acting in concert. The two victims encountered the suspects standing together, the two victims and the two suspects stood together as a group in the alley, the two victims were robbed standing next to each other, the two suspects left together, and the two suspects were found together. Simply because one suspect carried the money or the weapon, or did all of the talking, does not make it dispositive that the two were not acting in unison.

Whitten's conviction for armed robbery is further supported by the idea that where there is a concerted effort by two armed defendants to rob two victims, both defendants may be charged with two crimes, one for each victim. Courts have found both defendants guilty of two crimes where the defendants acted in concert, even if only one defendant took the money from the victim. *People v. Butler* (1976), 64 Ill. 2d 485, 489, 356 N.E.2d 330; *People v. Ortiz* (1987), 156 Ill. App. 3d 170, 174, 509 N.E.2d 633; *In re Fleming* (1976), 37 Ill. App. 3d 785, 788, 347 N.E.2d 193; *People v. Gant* (1974), 18 Ill. App. 3d 61, 65, 309 N.E.2d 265.

The parties discuss *People v. English* (1975), 32 Ill. App. 3d 691, 336 N.E.2d 199, which found both defendants guilty of armed robbery. Whitten contends that case is inapplicable since both defendants in that case had weapons. However, in the *Butler* case, both defend-

ants also had weapons, and the supreme court found both of them guilty of two armed robberies because they acted in concert. Each defendant fulfilled elements of the crime even though only one of them took the money from the victim, so both defendants were convicted, having acted in concert. We simply extend that logic to apply to this case; here, we merely have a different element of the crime, the holding of a weapon, in the course of a concerted act against two victims. (*Butler*, 64 Ill. 2d at 489.) Under *Butler*, we would affirm the convictions of both defendants for armed robbery.

We hold that both convictions are reversed and remanded for new trial.

Judgments reversed and remanded.

CERDA, P.J., and TULLY, J., concur.