*In re* MARRIAGE OF CELESTE DANKO, Petitioner-Appellee, and RONALD DANKO, Respondent-Appellant.

First District (6th Division)   No. 1—91—0637

Opinion filed May 29, 1992.

Larry S. Kajfes, Ltd., of Chicago, for appellant.

John O'Donnell, of Buikema, Hiskes, Dillner, O'Donnell & Marovich, Ltd., of Orland Park, for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

The respondent, Ronald Danko, appeals from an order which vacated part of a default judgment for dissolution of marriage which had been entered pursuant to his counterpetition for dissolution of marriage. The principal issue is whether the trial judge erred when she based the vacature order on the alleged ineffective assistance of one of the petitioner's attorneys.

The petitioner, Celeste Danko, filed a petition for dissolution of marriage on October 2, 1986, to end her 17-year marriage to Ronald Danko. The Dankos had three children and assembled a marital estate, composed primarily of the marital residence.

After the dissolution petition had been filed, the parties frequently appeared in court for failure to comply with court orders. Those instances of noncompliance included the petitioner's failure to follow the court's visitation orders; and the respondent's failure to pay child support, to follow the court's guidelines for temporary visitation and for harassing behavior. Each party had been held in contempt more than once for failure to comply with the court's orders.

Each party retained a number of attorneys; the respondent has been represented by three different law firms, and the petitioner has been represented by four.

The petitioner's second attorney was granted permission to withdraw as counsel on November 10, 1988. On December 12, she filed a petition for attorney fees. The next day, the respondent filed a counterpetition for dissolution of marriage.

On February 6, 1989, the respondent moved for a default judgment after the petitioner failed to respond to his counterpetition for dissolution of marriage. The petitioner did not appear on February 6, 1989, although she was served with notice of the motion for a default judgment. It was established at a later hearing that she had contacted the respondent's attorney by telephone before the hearing, had told him that she didn't "have time to come down" and that if she did not like the decision, she would get an attorney "afterwards."

After the respondent's counsel presented his case, the trial judge asked for a transcript of the hearing to assist her in making a "thoughtful distribution" of marital assets. On February 15, the judge entered a default judgment for attorney fees in favor of the petitioner's second attorney.

On August 29, 1989, the judge entered a default judgment on the respondent's counterpetition for dissolution of marriage. Sometime before the August hearing, the petitioner retained a third law firm. The petitioner's third attorney was present at the hearing on August 29 but did not speak at the hearing and did not enter a formal appearance until August 31. When the judge entered the default judgment on August 29, she expressly reserved the issue of child support. On August 29, the judge entered an order barring the petitioner from maintenance on the basis of the respondent's statement that the petitioner was employed and he was not.

The trial judge entered her written judgment in favor of the respondent's counterpetition on December 19, 1989. That judgment referred to the February and August proceedings. The order dissolved the marriage, granted custody of the three minor children to the petitioner, provided for visitation rights of the respondent, distributed the

marital assets to the parties and reserved the question of child support because the respondent was not employed at the time. The order also provided that the respondent was to pay the petitioner 32% of any income he might receive and that he was to report to the petitioner the workers' compensation award he would receive for his pending claim. The court noted that the respondent had proved all the elements of his counterpetition. The default judgment was apparently approved by the petitioner's third attorney. In any event, her third attorney never moved to vacate the default judgment.

After the entry of the default judgment, problems persisted as the petitioner allegedly continued to limit the respondent's visitation with the children. As a result, the respondent filed an emergency petition to show cause on January 2, 1990, which alleged that the respondent had been denied his visitation rights. On January 4, 1990, the court found the petitioner in contempt for failure to comply with its visitation order. On January 31, the judge held a hearing on the emergency petition to show cause where both parties called witnesses and presented arguments on whether the petitioner was in violation of the court's visitation order.

The judge directed that an order be drawn committing the petitioner to jail but stayed that order so long as the petitioner continued to purge herself of contempt by delivering the children to the respondent.

On February 23, 1990, the petitioner's fourth attorney replaced the petitioner's third attorney. The petitioner's new attorney immediately moved to appoint a guardian *ad litem* for the children and filed a motion to purge the contempt order of January 4, 1990.

On March 8, 1990, the petitioner's fourth attorney moved to reopen the proofs to purge the contempt orders of January 4, 1990, and February 9, 1990, under section 2—1203 of the Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1203.) Count II of the petition was based on the alleged inadequate assistance of counsel that the petitioner received at her contempt hearing on January 31, 1990. The petitioner alleged her representation was inadequate because at the contempt hearing her former attorney failed to call witnesses on her behalf and failed to present evidence of physical threats she received, of the children's mental state or of a protection order which had been entered against the respondent.

On April 19, 1990, the petitioner filed a motion to vacate part of the judgment for the dissolution of marriage. The motion alleged that the division of marital assets was unfair in requiring the petitioner to sell the marital residence before the outcome of the respondent's

pending workers' compensation claim was known. The specific prayer for relief sought only to delay the sale of the house until the respondent's workers' compensation claim was final. The prayer for relief, however, did include a general prayer for relief which asked for "such other and further relief as this Court deems equitable and just." The motion to vacate was not based on any alleged ineffective assistance of counsel.

On August 17, 1990, the judge heard arguments on the petitioner's motion to reopen the proofs. In attacking the petitioner's motion to reopen the proofs, the respondent contended that the motion was improper because no new facts were alleged. The trial judge allowed the pleadings to stand, stating that even though the 30-day limit under section 2—1203 had passed, the striking of the pleadings would not be in the interests of justice or the children.

The judge allowed the proofs to be reopened. She stated that the petitioner should not be expected to have the legal knowledge which would allow her to detect the incompetence of her attorney. Implicit in her ruling is a finding that the petitioner's attorney was incompetent on January 31, 1989.

The court then addressed the respondent's motion to vacate the default judgment. The petitioner's attorney stated that the relief sought through the motion "deal[t] mostly with the house" and conceded that the petitioner might have some difficulty proving due diligence.

The respondent argued that the motion was actually a motion to modify the judgment. After the judge rejected this argument and stated that this was clearly a motion to vacate under section 2—1401, the respondent argued that the petitioner failed to satisfy the requirements of section 2—1401 because there was no meritorious defense or allegation of due diligence made in the petitioner's motion.

The judge then vacated the entire default judgment, except for the portion dissolving the marriage. In doing so she said that the petitioner was represented by at least one attorney who failed "to do things that were normally and customarily appropriate in *** domestic relation proceedings." The judge again noted that the petitioner should not be required to have the knowledge of an attorney. She found that due diligence was present and appeared to conclude that the inadequate assistance of counsel was sufficient to satisfy the meritorious defense requirement of section 2—1401. The judge recognized that she had vacated the entire judgment *sua sponte*; she said that it was impossible to vacate only a portion of the default judgment without considering all the factors involved.

On February 5, 1991, the judge heard arguments on the respondent's motion to reconsider. In addition to the arguments the respondent had previously raised, the respondent also alleged that the default judgment should not have been vacated because no evidentiary hearing was held on the petitioner's section 2—1401 petition. The respondent contended that as the value of the house and the effectiveness of counsel were in dispute, it was incumbent on the petitioner to present a *prima facie* case. Presentation of a *prima facie* case, needless to say, would require a hearing.

The judge denied the respondent's motion for reconsideration because, she said, reinstating the default judgment would be unjust. In rejecting the respondent's claim that an evidentiary hearing was required, the judge again commented on the gross ineffectiveness of the petitioner's prior counsel; the judge noted that she had a right to take judicial notice of proceedings before her, which would include the question of the effectiveness of counsel.

■ It has been repeatedly held that ineffective assistance of counsel is not a ground for relief under section 2—1401 of the Code of Civil Procedure or its predecessor, section 72 of the Civil Practice Act. (*Gruss v. Beverley* (1990), 201 Ill. App. 3d 502, 559 N.E.2d 135; *Illinois Marine Towing Corp. v. Black* (1979), 74 Ill. App. 3d 909, 393 N.E.2d 707; *Bartolini v. Popovitz* (1969), 108 Ill. App. 2d 89, 246 N.E.2d 834; *Antczak v. Antczak* (1965), 61 Ill. App. 2d 404, 209 N.E.2d 838.) There may be instances where the rule should be relaxed; for example, for the protection of a minor's interest. (See, *e.g., People ex rel. Franks v. Franks* (1970), 126 Ill. App. 2d 51, 261 N.E.2d 502.) But this case does not provide such an instance. The court reserved the question of child support; the respondent was ordered to report to the petitioner any income he might receive and to pay her 32% of the income. The order also required the respondent to inform the petitioner of any workers' compensation award he might receive. The judge's retention of jurisdiction over the rights of the children and the judge's continuing power to enter appropriate orders were sufficient to safeguard the interests of the children without the order she ultimately entered vacating everything but the dissolution of marriage.

The judge relied on *Rodriguez v. Owaynat* (1985), 137 Ill. App. 3d 1017, 485 N.E.2d 438. That case is factually distinct from this case in the following ways: (1) the *pro se* litigant actually appeared in court, but did not understand that he had to present evidence; (2) after the default was entered, the *pro se* litigant promptly retained an attorney who filed a motion to vacate under section 2—1203; and (3) most im-

portantly, the *Rodriguez* litigant had a meritorious defense which was not based on his own or his counsel's incompetence. We conclude, therefore, that the judge erred in granting the petitioner's motion to vacate part of the judgment.

■ In the case before us, the motion to vacate part of the judgment did not allege ineffectiveness of counsel. The judge raised ineffectiveness *sua sponte*; she said that a hearing was not required because she could take judicial notice of the ineffectiveness in the proceedings before her. In the recent case of *People v. Speight* (1991), 222 Ill. App. 3d 766, 584 N.E.2d 392, the appellate court recognized that a trial judge may take judicial notice *sua sponte* on "rare occasions" but cautioned that the trial judge should insure that "such notice does not amount to advocacy for either party." (222 Ill. App. 3d at 771.) The court concluded as follows:

"While we hold that a trial judge in rare instances may take *sua sponte* judicial notice of facts, the judge must make clear during the course of the trial, and not after the evidence is closed, what facts and sources are included in the *sua sponte* notice. The concept of fair play requires that all parties to an action be given a fair opportunity to rebut any evidence which might be damaging to their position. [Citation.] A party has the same right to rebut evidence admitted by *sua sponte* judicial notice as it does to rebut evidence introduced by the opposing party. [Citations.]" 222 Ill. App. 3d at 772.

We are unable to determine what facts the judge judicially noticed which would establish that the petitioner's counsel had been ineffective. The respondent, therefore, could not rebut what was not in the record. We believe that, even if ineffective assistance of counsel could be a ground for relief under section 2—1401, the trial judge erred in failing to identify which facts she was judicially noticing.

For these reasons, the judgment of the circuit court is reversed.

*Judgment reversed.*

McNAMARA and RAKOWSKI, JJ., concur.