**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190398-U

Order filed December 7, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| PURYEAR LAW, P.C., | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Rock Island County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | Appeal No. 3-19-0398 |
| CHRISTOPHER FARRIS and BRANDY | ) | Circuit No. 16-SC-2146 |
| FARRIS, | ) | |
| | ) | |
| Defendants-Appellees. | ) | Honorable Carol M. Pentuic, |
| | ) | Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Justices Carter and O'Brien concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The trial court did not err by (1) *sua sponte* taking judicial notice after the close of evidence; (2) finding the fees requested were unreasonable; and (3) denying fees from the previous appeal.

¶ 2     Plaintiff, Puryear Law, P.C. (Puryear), sued its former client, defendant Christopher Farris, and the third-party cosigner to the representation agreement, Brandy Farris, for over $2789 in unpaid fees after receiving approximately $12,000 in fees during the course of representation. We review whether the lower court erred by (1) taking judicial notice *sua sponte* after the close of

evidence, (2) finding a portion of the fees accumulated by Puryear unreasonable, and (3) denying fees from a previous appeal in this case. For the reasons set forth below, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        This is the second time this matter has come before this court. See *Puryear Law, P.C. v. Farris*, 2018 IL App (3d) 170793-U. Consequently, we briefly summarize the facts of the previous appeal.

¶ 5                                  A. Previous Appeal

¶ 6        Puryear represented Christopher in a dissolution proceeding and related orders of protection. Brandy, Christopher's mother, signed the representation agreement as a cosigner. Christopher soured on Puryear's representation and made allegations that the case was "being dragged on" and that the fees he was paying for representation by Puryear were "ridiculous and outrageous." As a result of these allegations and nonpayment by Christopher, Puryear moved to withdraw before a resolution in the dissolution case was reached. The motion to withdraw was uncontested and granted.

¶ 7        In December 2016, Puryear filed a small claims complaint against Christopher and Brandy, seeking damages for unpaid legal services in the total of $2789. At trial, Puryear claimed the amount owed was $3295.50. Of note, at the beginning of the hearing, Puryear stated,

> "In total, on the divorce matter, [Christopher] paid $12,078.14 for the divorce, for the defense of the [order of protection], for the discovery preparation—well, I shouldn't say the preparation for trial. On the [order of protection] against the opposing party and her boyfriend, there's a total of $2,948.44 paid for a total of [$]15,026.58 for the several matters that were being litigated."

The orders of protection named Christopher and his ex-wife's minor child as the protected party. Eventually the proceedings for the orders of protection were consolidated within the dissolution proceeding. Puryear requested that the trial court take judicial notice of the dissolution case, which it did.

¶ 8    At the conclusion of the proceedings, the trial court denied Puryear's claim for fees against Brandy as a third party cosigner to the representation agreement because (1) she " 'was not a client and received no [legal] services,' " and (2) the representation agreement signed by Brandy failed to indicate that she signed as a cosigner for Christopher. *Id.* ¶ 7. "The court also found that [Puryear's] independent breach of contract action against Christopher could not stand because (1) section 508 of the Marriage Act precluded it and (2) only the judge who 'actually observed' the dissolution proceedings could determine whether plaintiff's fees were reasonable and the services necessary." *Id.*

¶ 9    In reversing the lower court, a panel of this court found that the parties clearly intended for Brandy to sign the contract as a cosigner for Christopher. *Id.* ¶ 26. Further, the trial court erroneously relied on cases predating the enactment of a relevant subsection of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/508(e) (West 2016)) to find that the Act precluded Puryear's independent common law breach of contract action. *Puryear Law, P.C.*, 2018 IL App (3d) 170793-U, ¶ 18. Moreover, the notion that only the judge who "actually observed" the dissolution proceedings could determine whether the fees were reasonable and services necessary was erroneous. *Id.* ¶ 19. This court remanded the matter with directions for the trial court to "determine the reasonableness of the assessed attorney fees." *Id.* ¶ 29.

¶ 10                                    B. Current Appeal

¶ 11 On remand, the trial court conducted further proceedings. Puryear, again, referenced work done on the orders of protection, submitting billing invoices to the court. The majority of questioning and evidence submitted during the hearing on remand was duplicative of the initial hearing.

¶ 12 Following arguments, the court took the matter under advisement and issued a written disposition denying the attorney fees sought by Puryear. In pertinent part, the trial court ruled:

> "The court is denying the fees assessed for the multiple orders of protection because they were filed and proceeded with in contravention [of] local rule and contrary to the guidelines of 750 ILCS 5/603.5. Those actions undid existing court orders in the divorce and were ultimately either denied or dismissed. There was no benefit to the client for proceeding in this matter. Indeed, they ran up costs and did nothing to move the matter forward. They had no benefit to the client and were contrary to local rule and practice. Experienced counsel should be aware of all rules of practice and should follow those rules. An attorney who practices in the area of family law should also be aware of the standards set forth in that act. Failing [to] follow local rule[s] and setting matters before judges NOT assigned to the case and using the domestic violence act instead of emergency provisions of the Family law act as set forth in 750 ILCS 5/501(a) all resulted in the expenditure of fees that this court cannot find to be reasonable pursuant to the standards set forth in *Shinn*, *supra*.
>
> When reviewing the standards as outlined by the appeals court, there was a large amount of time expended on this matter and minimal results obtained for the client. There was an apparent misuse of the order of protection act on at

least three occasions. It is impossible for this court to find that those services were necessary given the results and the fact that the dissolution docket indicates that the ultimate issues were resolved in that case. For this reason, upon an examination of all the invoices and all of the court dockets, this court finds that the fees sought to be reimbursed should be reduced by $2844.00. That amount is attributable to the failed orders of protection. That amount exceeds the amount being sought by [Puryear]. The court is not focusing on the fact that the orders of protection were not ultimately successful. No attorney can ever guarantee an outcome. The court is specifically concerned about the failure to follow local rules and statutory remedies set forth in the Dissolution statute. The failure to comply with those standards resulted in unnecessary costs that did not move an already extremely expensive divorce with limited issues forward."

The court also found that the costs from the previous appeal were not recoverable because Puryear failed to comply with procedure as laid out in Illinois Supreme Court Rule 374 (eff. July 1, 2017) despite cost-shifting language in the representation agreement signed by Christopher and Brandy.

¶ 13 Puryear filed a motion to reconsider which advanced the same arguments we consider on appeal. Specifically, Puryear took issue with the lower court taking judicial notice of the orders of protection proceedings *sua sponte* and using the fees charged in those matters to reduce the fees owed by Christopher and Brandy to zero without providing an opportunity to respond. The court stated it was granting the motion to reconsider but denying the relief requested. The court went on to "clarify" its previous ruling, finding that after applying the relevant factors the fees sought were unreasonable. The court noted,

"This was not a novel case. It is not significant. There was nothing unusual about this case that would warrant the expenditure of [$]15,000 plus attorney's fees. This was a grass roots, simple, pedestrian divorce, and—and I have never seen this much fees wrapped up in a case like this."

¶ 14    Puryear appeals.

¶ 15                                  II. ANALYSIS

¶ 16    Puryear presents three contentions of error for our review. First, that the trial court erred when it *sua sponte* took judicial notice of the orders of protection proceedings "in a manner that amounted to advocacy for the defendants." Due to this error, the denial of the request for a new trial in the motion to reconsider was an abuse of discretion. Second, Puryear argues that the trial court erred in finding the charged fees unreasonable. And third, Puryear takes issue with the court's denial of costs from the previous appeal where the plain language in the contract for legal services required Christopher and Brandy to pay for "ALL COSTS incurred in any collection action[.]" Puryear requests a new trial if we find remand is required and for the assignment of a new judge to the case pursuant to our authority under Illinois Supreme Court Rule 366 (eff. Feb. 1, 1994).

¶ 17                               A. Judicial Notice

¶ 18    First, we review whether the lower court erred in *sua sponte* taking judicial notice of the orders of protection proceedings after the close of evidence. It is well established that courts can take judicial notice of matters which are commonly known or, if not commonly known, are readily verifiable from sources of indisputable accuracy. *Murdy v. Edgar*, 103 Ill. 2d 384, 394 (1984); Ill. R. Evid. 201(b) (eff. Jan. 1, 2011). Such matters include, *inter alia*, prior proceedings between the same parties and essentially the same facts as well as records in related cases. See *People v. Davis*,

65 Ill. 2d 157, 164 (1976); *Sundance Homes, Inc. v. County of DuPage*, 195 Ill. 2d 257, 259 (2001); see also *Wells Fargo Bank, N.A. v. Watson*, 2012 IL App (3d) 110930, ¶ 3 n.1.

¶ 19     Illinois Rule of Evidence 201 provides that "[a] court may take judicial notice, whether requested or not." Ill. R. Evid. 201(c) (eff. Jan. 1, 2011). Further, "[j]udicial notice may be taken at *any stage of the proceeding*." (Emphasis added.) Ill. R. Evid. 201(f) (eff. Jan. 1, 2011). And although a party is entitled to an opportunity to be heard regarding "the propriety of taking judicial notice and the tenor of the matter noticed" in the absence prior notification, the request to be heard "may be made after judicial notice has been taken." Ill. R. Evid. 201(e) (eff. Jan. 1, 2011).

¶ 20     Puryear cites to *People v. Speight*, 222 Ill. App. 3d 766, 771 (1991), *rev'd*, 153 Ill. 2d 365 (1992), contending that "[a] trial judge may, on rare occasions, take *sua sponte* judicial notice of facts during a trial, however not *after* the close of evidence, at the report of his findings." (Emphasis in original.).

¶ 21     The lower court did not err by *sua sponte* taking judicial notice of the orders of protection proceedings after the close of evidence. Further, we find *Speight*, and the proposition that a court may not take judicial notice after the close of evidence, inapplicable to the facts of this case as presented.

¶ 22     As Rule 201 unequivocally states, the lower court may *sua sponte* take judicial notice at *any* stage of the proceeding. This logically includes after the close of evidence. The rule also allows for judicial notice without prior notification to the parties. Nonetheless, "[a] party has the same right to rebut evidence admitted by *sua sponte* judicial notice as it does to rebut evidence introduced by the opposing party." *People v. Speight*, 222 Ill. App. 3d 766, 772 (citing *Housing Authority of City of Norwalk v. Brown*, 579 A.2d 1110, 1112 (Conn. Ct. App. 1990)); *State v. Barnes*, 187 N.W. 2d 845, 848 (Wisc. 1971)). In the absence of prior notification, the court need

only provide to the party questioning the propriety of the court taking judicial notice or the tenor of the matter noticed an opportunity to be heard. The opportunity to be heard takes into account the concept of fair play and allows parties to an action of fair opportunity to rebut any evidence which might be damaging to their position. See *Drovers National Bank v. Great Southwest Fire Insurance Co.*, 55 Ill. App. 3d 953, 957 (1977). This reading of the rule comports with its plain language and interpretation of the similar Federal Rule of Evidence 201. See (Fed. R. Evid. 201(d) (eff. Dec. 1, 2011) ("The court may take judicial notice at any stage of the proceeding."); *Saccameno v. Ocwen Loan Servicing, LLC*, 372 F. Supp. 3d 609, 652-54 (N.D. Ill. 2019) (stating there is nothing improper about taking judicial notice after the close of evidence).

¶ 23     Here, Puryear received an opportunity to be heard on its arguments concerning the court taking judicial notice of the orders of protection proceedings in this matter. Puryear was given the opportunity in its pleading on the motion to reconsider and during the hearing on the motion to reconsider to argue against the propriety of the court taking judicial notice and the tenor of the matter noticed. That is all the rule requires.

¶ 24     We find *Speight* inapplicable owing to the fact that Illinois Rule of Evidence 201 had not yet been adopted when the appellate court issued its ruling in that case. When reversing the appellate court's decision in *Speight*, the Illinois Supreme Court explicitly refused to adopt Federal Rule of Evidence 201, which as previously mentioned is similar to Illinois Rule of Evidence 201 adopted in 2011. See *Speight*, 153 Ill. 2d at 382. Furthermore, taking judicial notice in a criminal trial presents issues that civil cases, like this one, do not present.

¶ 25     To be clear, taking judicial notice after the close of evidence in this instance was permissible because the court complied with the rule and Puryear received an opportunity to be heard. While the manner in which judicial notice was taken in this case is allowed by the rule,

judicial economy dictates that the preferred course of action is to notify the parties of the material to be judicially noticed and allow for arguments *prior* to the close of evidence.

¶ 26       As a final note on this issue, it is disingenuous to claim, as Puryear does, that the orders of protection were not before the court to consider. During the initial hearing, Puryear asked the court to take judicial notice of the dissolution case in which the orders of protection were consolidated. To start the hearing on remand, Puryear specifically stated that the services provided regarding the orders of protection were included in the amount billed for legal services and reintroduced the invoices for those services into evidence. This is in addition to the previous arguments noting the amounts billed for the orders of protection. Moreover, contained in the record are orders and pleadings, as well as billing entries from the proceedings on the orders of protection Puryear supplied to the court. It is apparent that the lower court did not decide to take judicial notice of the orders of protection proceedings on a whim but, instead, encouraged to do so by the evidence submitted by Puryear.

¶ 27       Accordingly, the trial court did not err in *sua sponte* taking judicial notice of the orders of protection proceedings after the close of evidence and denying Puryear a new trial.

¶ 28                                B. Reasonableness of Fees

¶ 29       Puryear next contends that the trial court erred in ruling that a portion of the fees accumulated by Puryear were unreasonable. The trial court, in its written order, found that the failure to follow statutory strictures and local rules when prosecuting and defending against the respective orders of protection that ultimately were used "to influence the outcome of the divorce[,]" resulted in the fees tied to those services being unreasonable. The court stated that the disposition of these orders of protection should have been achieved through "motions for relief in the divorce."

¶ 30　　As previously mentioned, the lower court clarified its ruling during the motion to reconsider and, while amending its reasoning, maintained that when applying the factors contained in Illinois Professional Rule of Conduct 1.5 (a) to the fees accumulated, the amount of fees charged on the whole were unwarranted when compared to the complexity of the litigation and the benefit realized by the client.

> "Unlike findings in a fee petition case, which rest in the sound discretion of the trial judge, the reasonableness of attorney fees in a common law breach of contract action presents a question to be resolved by the trier of fact, following a fair and impartial trial. [Citation.] In civil actions brought by attorney-plaintiffs to recover compensation for professional services performed under an alleged contract, the usual rules governing breach of contract actions apply because '[t]he liability to pay for legal services stands upon the same footing as other agreements.' [Citation.] *** 'It is not the province of this court to substitute its judgment for that of a [trier of fact]' in a breach of contract action seeking attorney fees ***. [Citations.]" *Wildman, Harrold, Allen & Dixon v. Gaylord*, 317 Ill. App. 3d 590, 597 (2000).

¶ 31　　Where an express contract controls the terms of representation, the terms of the contract control and the hourly rate agreed to by the parties is the starting point of the court's analysis. *Id.* at 601. Nonetheless, fees pursuant to an express contract must still satisfy Rule 1.5 of the Illinois Rules of Professional Conduct mandating that all fees for legal services be reasonable. *Id.*; Ill. R. Prof'l Conduct 1.5(a) (eff. Jan. 1, 2010). Whether the fees sought are via a fee petition or an independent breach of contract claim, the court must consider the following factors in determining the reasonableness of the fees:

"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent." Ill. R. Prof'l Conduct 1.5(a) (eff. Jan. 1, 2010).

¶ 32    In applying these factors, the trial court may rely on its own knowledge and experience in determining the value of the legal services rendered. See *Golstein v. Handley*, 390 Ill. 118, 125-26 (1945); *Anderson v. Anchor Organization for Health Maintenance*, 274 Ill. App. 3d 1001, 1008 (1995). We will not reverse the lower court's judgment unless it is unsupported by the manifest weight of the evidence. *Wildman*, 317 Ill. App. 3d at 599. "A trial court's judgment is against the manifest weight of the evidence when its findings appear to be unreasonable, arbitrary, or not based on the evidence." *Id.* We may affirm the lower court's judgment on any basis supported by the record. See *Monson v. City of Danville*, 2018 IL 122486, ¶ 41.

¶ 33    Puryear's main contention within this argument is that the lower court should not have penalized it for successfully defending against an order of protection filed outside the divorce and

that the individual an additional order of protection was filed against (Christopher's ex-wife's boyfriend) was not a party to the divorce.

¶ 34     After reviewing the trial court's rulings and the record in this matter, as well as taking judicial notice of the dockets in the orders of protection, and the local court rules for the Fourteenth Judicial Circuit, we find that the trial court's judgment denying Puryear's attorney fees is supported by the manifest weight of the evidence. See *People v. Hammond*, 2011 IL 110044, ¶ 70 (taking judicial notice of circuit court rules).

¶ 35     We must point out that one of the orders of protection, No. 16-OP-463, filed by Puryear was against Christopher's ex-wife. As asserted by the lower court, local rules for the Fourteenth Judicial Circuit clearly prohibit obtaining an *ex parte* order of protection where the respondent has an attorney of record without providing advance notice to opposing counsel. See 14th Judicial Cir. Ct. R. 9(A)(j) (April 8, 2009).

¶ 36     On the order of protection Puryear defended against, No. 15-OP-1053, we note that the court presiding over the proceedings found that the petition to dismiss filed by Puryear was incomplete and directed Puryear to correct the petition. Ultimately, that correction was unnecessary as the petition for the order of protection was voluntarily dismissed after the parties negotiated a modification to a temporary order in the dissolution case.

¶ 37     The other order of protection filed by Puryear, No. 16-OP-462, listed the ex-wife's boyfriend as respondent, noted that the respondent and the minor child shared a common dwelling, and stated that respondent was the primary caretaker of the child. The circuit court continued the matter to be heard as a part of the dissolution proceeding. Once heard, the court found that Christopher, represented by Puryear, failed to meet his burden of proof.

¶ 38 Turning to the oral pronouncement during the motion to reconsider, the lower court opined that "[t]his was not a novel case. It is not significant. There was nothing unusual about this case that would warrant the expenditure of [$]15,000 plus attorney's fees. This was a grass roots, simple, pedestrian divorce, and—and I have never seen this much fees wrapped up in a case like this."

¶ 39 On the whole, there is a sufficient basis to affirm the lower court's ruling that the fees sought by Puryear are unreasonable.

> "The primary purpose of the Domestic Violence Act is to aid victims of domestic violence and to prevent further violence. [Citations.] Obtaining an order of protection is not the proper procedure for resolving child custody or visitation issues. Those issues should be resolved under the Illinois Marriage and Dissolution of Marriage Act. [Citations.]." *Radke ex rel. Radke v. Radke*, 349 Ill. App. 3d 264, 268-69 (2004) (citing *Wilson v. Jackson,* 312 Ill. App. 3d 1156 (2000)).

¶ 40 The lower court noted that in contravention of local rules and statutory strictures, Puryear obtained an *ex parte* order of protection against the other party in the dissolution proceeding. It also appears that Puryear's pleading to dismiss in the defense against another order of protection was defective. The resolution of that order of protection case came *vis-à-vis* the modification of an order in the dissolution case. Also, the proceedings against the boyfriend of the ex-wife was consolidated within the dissolution and once heard, the court found there was insufficient evidence to grant relief.

¶ 41 In addition to the above, when applying the factors contained within Illinois Rule of Professional Conduct 1.5(a), the lower court found that this was not a complex matter and despite

- 13 -

the large amount of fees accumulated, Puryear obtained minimal results for the client. Ultimately, the judge presiding over the dissolution case cast the *ex parte*, emergency orders of protection aside once collapsed into the dissolution proceedings. Puryear withdrew before obtaining a resolution in the dissolution case.

¶ 42    The record supports the lower court's judgment. Accordingly, the trial court did not err in concluding a portion of Puryear's fees were unreasonable.

¶ 43                              C. Costs of Previous Appeal

¶ 44    Puryear also alleges an entitlement to costs incurred in successfully prosecuting the previous appeal. The trial court found Puryear's failure to follow the procedural requirements laid out in Illinois Supreme Court Rule 374 in the previous appeal prevented them from seeking those costs pursuant to the representation agreement on remand.

¶ 45    While the trial court focused on Puryear's failure to comply with supreme court rules, we affirm its judgment on this issue for a different reason. See *In re Estate of Funk*, 221 Ill. 2d 30, 86 (2006). When Puryear prevailed in the previous appeal, it merely won a battle. Now that we affirm the lower court's determination denying Puryear fees, it has lost the war. We find, and Puryear concedes, that our affirmance of the lower court's judgment that there is no debt owed to Puryear for unpaid attorney fees relieves us from having to consider whether Puryear is entitled to costs from the previous appeal. As there is no debt owed by Christopher and Brandy, the costs incurred in collecting the nonexistent debt in the prior appeal are not subject to recovery.

¶ 46    Accordingly, the trial court did not err in denying Puryear fees from the previous appeal.

¶ 47                                  III. CONCLUSION

¶ 48    For the foregoing reasons, we affirm the judgment of the circuit court of Rock Island County.

¶ 49          Affirmed.